CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
DEC 20 2012
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MICHAEL J. NASSER, SR., | ) | CASE NO. 5:12CV00097 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| WHITEPAGES, INC., | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

Before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) are plaintiff's September 27, 2012 and October 5, 2012 motions for entry of default and default judgment and the defendant's October 2, 2012 motion to dismiss for failure to state a claim, to conduct proceedings and render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the motions. Plaintiff seeks entry of default and default judgment on the grounds that the defendant failed to respond to his state court complaint or file for removal within the statutory period. Defendant seeks to dismiss plaintiff's case on the grounds of collateral estoppel and immunity for online intermediaries under Section 509 of the Communications Decency Act of 1996, 47 U.S.C. § 230 ("CDA"). For the reasons that follow, the undersigned RECOMMENDS that an Order enter DENYING plaintiff's motions, GRANTING the defendant's motion under the CDA, and DISMISSING plaintiff's complaint from the docket of the court.

**CASE HISTORY AND PROCEDURAL BACKGROUND**

Plaintiff is a *pro se* litigant who, at all relevant times, resided with his wife in Frederick County at 436 Westside Station Drive, Winchester, Virginia, and whose household telephone number was (540) 662-3132. (Dkt. No. 5-3, at 1.) The defendant is the owner of the websites

www.whitepages.com, www.411.com, www.directoryassistance.com, among others. *Id.* Plaintiff alleges that the defendant incorrectly listed his address and telephone number as that of "Comcast Phone of Virginia" and "Comcast Phont of Virginia." *Id.* at 2. Plaintiff also claims that the defendant incorrectly listed his wife as being an employee of a company called "Nastrib," which plaintiff believes to be nonexistent, and of cohabiting with another woman at plaintiff's current address.[1] (Dkt. No. 5-3, at 3.) On October 28, 2009, plaintiff contacted the defendant by telephone and spoke with a company representative. *Id.* at 3. He avers that, when contacted, defendant's customer service representative refused to disclose where the defendant acquired the information but stated that she had removed the incorrect listings. *Id.* at 3-4. Plaintiff further alleges that, despite such representation, the incorrect listings remained on the defendant's websites from October 2, 2009 through February 17, 2011. *Id.* at 5. Moreover, plaintiff avers that the defendant sold these incorrect listings to Yellowbook, leading to their inclusion in the "2011-2012 Yellowbook Edition for the Northern Shenandoah Valley Area" phonebook. *Id.* at 12-13.

Plaintiff alleges that, because of these errors, he received thousands of unwanted calls intended for Comcast. *Id.* at 2, 13-14. Plaintiff pleads that he has suffered extreme emotional distress which manifested in insomnia, elevated blood-sugar, ringing in his ears, and re-occurrence of stuttered speech and headaches, all of which necessitated medical examination and treatment. (Dkt. Nos. 5-3, at 13-14; 1-2, at 24-25.) He also asserts that his underlying heart condition was aggravated by the increased stress caused by the defendant's conduct. (Dkt. Nos.

---

[1] The undersigned informed plaintiff at the hearing that a *pro se* plaintiff does not have the right to bring claims on behalf of another party. *See generally Myers v. Loudoun County Public Schools*, 418 F.3d 395, 401 (4th Cir. 2005); *Oxedine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). Ordinarily, such claims would be dismissed. Should the presiding District Judge adopt the undersigned's recommendation for disposition of the motions, the issue becomes moot.

2

5-3, at 14; 1-2, at 24-25.) Accordingly, plaintiff seeks an award of $500,000 in compensatory and punitive damages under state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and nuisance.[2] (Dkt. No. 5-3, at 14-15, 20, 23, 30-31.)

The record before the court shows that on April 21, 2010, plaintiff instituted his first action in the Circuit Court of Frederick County, Virginia, jointly against WhitePages, Inc. and Verizon Virginia, Inc. (Dkt. No. 5-3, at 5-6.) Both defendants sought dismissal of all causes of action. On February 8, 2012, plaintiff non-suited his state law claims against WhitePages, and, on March 21, 2012, after the trial court had determined that plaintiff had failed to state causes of action against Verizon for intentional and negligent infliction of emotional distress, plaintiff settled the remaining nuisance claim against Verizon. *Id.* at 5-6. Then, on August 6, 2012, plaintiff filed this action in the Circuit Court of Frederick County solely against WhitePages. (Dkt. No. 6, at 1.)

On September 7, 2012, WhitePages filed a notice of removal of the state action to this court. (Dkt. Nos. 1; 7, at 1.) On September 27, 2012, plaintiff filed a motion for default judgment and, on October 5, 2012, moved for entry of default. (Dkt. Nos. 6, 15.) On October 2, 2012, the defendant moved to dismiss for failure to state a claim. (Dkt. No. 9.) By Order entered on October 1, 2012, the presiding District Judge referred all motions in this case to the undersigned. (Dkt. No. 8.) The undersigned will address by separate Order under 28 U.S.C. § 636(b)(1)(A) the non-dispositive motions raised by the parties during the course of proceedings and will address in this Report and Recommendation the motions for default, default judgment, and to dismiss under 28 U.S.C. § 636(b)(1)(B).

---

[2] In his motion for default judgment, plaintiff seeks a monetary award totaling $750,000. (Dkt. No. 6, at 5.) In his initial complaint, he asked for $100,000 compensatory damages and $300,000 in punitive damages. (Dkt. No. 1-1, at 27.)

3

## MOTIONS FOR DEFAULT

Plaintiff initiated this action in state court on August 6, 2012. (Dkt. No. 6, at 1.) For reasons known to him, plaintiff elected to withhold service of the complaint and summons on the defendant. *Id.* He rightly believed that the Code of Virginia allowed him one year to effectuate service of process after the state court complaint was filed. (Dkt. Nos. 5-3, at 29; 18, at 1, 7.); Va. Code Ann. § 8.01-275.1. Nevertheless, plaintiff contends, and there is no dispute, that on August 13, 2012, local counsel for WhitePages obtained a copy of plaintiff's complaint from the Clerk of the Frederick County Circuit Court. (Dkt. Nos. 7, 1; 18, 1.) On September 7, 2012, the defendant filed the notice of removal, and on September 10, it filed a non-dispositive motion to admit two of its counsel *pro hac vice*. (Dkt. Nos. 1; 2; 7, at 1.)

Under Virginia law, a plaintiff has one year to serve process on a defendant or risk dismissal. Va. Code Ann. §§ 8.01-275.1; 8.01-277. A defendant, whether in state or federal court, has 21 days after being served with a complaint and summons to file responsive pleadings. Fed. R. Civ. P. 12(a); Rules of the Supreme Court of Virginia 3:8(a) (2011). A defendant has thirty (30) days after "receipt" of the state court complaint or summons by "service or otherwise" to file a notice of removal of the case to federal court. 28 U.S.C. § 1446(b). A defendant who has not answered before removing the case to federal court must answer or present other defenses or objections within the longest of the following periods: (1) 21 days after receiving, through service or otherwise, a copy of the initial pleading stating the claim for relief; (2) 21 days after being served with the summons for an initial pleading on file at the time of service; or (3) 7 days after the notice of removal is filed. Fed. R. Civ. P. 81(c)(2).

When a defendant against whom affirmative relief is sought has failed to plead or otherwise timely defend, and that failure has been shown by affidavit or otherwise, entry of

4

default is authorized. FRCP 55(a); *U.S. v. Moradi*, 673 F.2d 725, 727-728 (4th Cir. 1982). Where un-liquidated damages are sought, the party seeking relief must move for default judgment, and a notice of a hearing on the motion must be served on the alleged party in default who has appeared in the case. FRCP 55(b). Default judgments are disfavored in this circuit, the Fourth Circuit Court of Appeals having stated, "We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *See also Dunbar v. Stellar Management Group I, Inc.*, No. 5:11cv00132, 2012 WL 4757944, at *1 (W.D.Va. October 5, 2012).

There is no dispute here that plaintiff did not attempt to effectuate service of process in any form permitted by state law on the defendant who is a foreign corporation. *See* FRCP 4(e)(1); Va. Code Ann. § 8.01–301. Moreover, WhitePages did not explicitly waive service of process in the Frederick County Circuit Court, though its appearance here on the motion to dismiss on substantive grounds subjects WhitePages to the personal jurisdiction of this court.

Plaintiff takes the position that service was effectuated when defendant's local counsel acquired a copy of plaintiff's complaint from the clerk of the Frederick County court.[3] (Dkt. No. 6, at 2.) He believes that his position is supported by Va. Code Ann. § 8.01–288, which provides in pertinent part, "process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter." Historically, this statute has been applied for the purpose of curing defects in service of process. *See Mveng-Whitted v. Virginia State University*, No. 3:11cv00842, 2012 WL

---

[3] Plaintiff's argues that the defendant essentially admitted to being served by submitting a copy of the complaint along with its notice of removal, under 28 U.S.C. § 1446 which requires that a defendant include all process, pleadings, and orders served upon it. WhitePages consistently has denied that it was served with process, and offers that it clearly in the notice of removal that it had not been served. (Dkt. No. 1, at 1.)

5

3686285, at *10 (E.D.Va. August 24, 2012). The question, however, is whether it applies to the circumstances presented in this case.

Defendant takes the position that the simple act of having an attorney, or anyone for that matter, merely pick up a copy of a complaint from the clerk is not sufficient to constitute service. In other words, the defendant does not believe that, by merely taking steps to inform itself of the contents of the complaint, it waived service or otherwise subjected itself to the jurisdiction of the state court. WhitePages offers that its local counsel had no authority to accept service, and plaintiff has not taken a contrary position. Moreover, defendant stresses the fact that plaintiff did nothing but allow the complaint to sit dormant in the state court without taking any action even to attempt service. (Dkt. No. 7, at 1-3.) Finally, WhitePages argues that Va. Code § 8.01–288 was not intended to excuse proper service, especially under the circumstances of this case. (Dkt. No. 20, at 3.) The undersigned agrees.

In *Spooltech, LLC v. UPS Ground Freight, Inc.*, No. 7:12cv00104, 2012 WL 4460416, at *3-4 (W.D.Va. July 23, 2012), Chief Judge Conrad determined that service of process was inadequate when the plaintiff simply left process with the receptionist for an office building in which the defendant's registered agent had its office. (*Id.* at *2.) The court concluded that, notwithstanding § 8.01–288, "the rules governing service of process 'are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.'" *Spooltech*, 2012 WL 4460416, at *3-4 (quoting *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)).

Here, plaintiff made even less effort than the plaintiff in *Spooltech* to serve process, for he took no steps at all to effectuate service. Moreover, WhitePages merely acquired a copy of the complaint which the undersigned believes falls short of "process" being "received" by the

6

party intended to be served. This action by defendant simply to acquire a copy of the complaint from the clerk was insufficient to invoke the provisions of §8.01-288. Likewise, the defendant took no action to make a general appearance in state court which, in effect, would have constituted a waiver of service. *See Lewis v. Cooke*, 95 F.Supp.2d 513, 519-520 (E.D.Va. 2000); *Gilpin v. Joyce*, 257 Va. 579 (1999). Accordingly, the undersigned finds that, having never been served, the defendant was not in default in state court on September 4, 2012.[4]

Even if there had been service, which cannot be shown here, plaintiff has not been prejudiced as a result of the defendant's alleged default. As a result, the undersigned has declined to direct entry of default, and certainly, the interests of justice would not be served by entering either default or default judgment at this stage of the proceedings. Therefore, it is RECOMMENDED that plaintiff's motions for entry of default and default judgment be DENIED.[5]

## MOTION TO DISMISS

The defendant contends that plaintiff's complaint should be dismissed on two principle grounds. First, it argues that plaintiff's emotional distress claims are barred by the doctrine of collateral estoppel. (Dkt. No. 10, at 6.) WhitePages points out, and there is no dispute, that plaintiff originally sued it and Verizon in state court on the same claims under the same relevant facts. *Id.* at 7. Both defendants moved to dismiss, and after the state trial judge granted plaintiff's motion to nonsuit WhitePages, he found that plaintiff had failed to state causes of action for negligent and intentional infliction of emotional distress against Verizon. *Id.* at 1-5.

---

[4] Furthermore, the defendant is in compliance with removal procedures, as it filed its notice of removal within 30 days of local counsel's acquiring a copy of complaint from the state court clerk. 28 U.S.C. § 1446(b)

[5] Because default, which is not dispositive, and default judgment are intertwined, the undersigned has elected to dispose of both motions on Report and Recommendation rather than separately by Order on the former and Report and Recommendation on the latter.

7

Notwithstanding, WhitePages also contends that all of plaintiff's claims are barred by the Communications Decency Act ("CDA"), on the grounds that Section 509 of the Act (47 U.S.C. § 230) provides a broad grant of immunity to online intermediaries, like WhitePages, against claims based on information published by, but not originating with, such intermediaries. *Id.* at 9-10. Finally, the defendant points out that, while promissory estoppel has been applied in some instances as an exception to CDA immunity, plaintiff's claim should be dismissed under the CDA both because he has failed to plead reasonable reliance, an essential element of promissory estoppel, and because Virginia Supreme Court has declined to recognize promissory estoppel as a viable theory. *Id.* at 13-14.

## APPLICABLE LAW, FINDINGS AND CONCLUSIONS

### Pleading Standard

It is well established that the court is to liberally construe *pro se* pleadings. *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002); *Terrell v. Bassett*, 353 F.Supp.2d 658, 660-661 (E.D.Va. 2005). The Supreme Court of the United States has held, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). By the same token, the federal courts may not be an advocate for a *pro se* plaintiff and must hold the complaint to certain minimal pleading standards. *Holsey v. Collins*, 90 F.R.D. 122, 128 (D.C.Md. 1981); *Switzer v. Town of Stanley*, 2010 WL 4961912, at *2-3 (W.D.Va. December 1, 2010). Under Fed. R. Civ. P. 8(a), a claim must include: a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought, which may include relief in the alternative or different types of relief.

8

Under Fed. R. Civ. P. 12(b)(6), a cause of action may be dismissed for "failure to state a claim upon which relief may be granted." The court must accept as true any factual allegations contained in the complaint, though it need not accept legal conclusions; and, to survive a motion to dismiss, a complaint must provide sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). Facial "plausibility" lies on a spectrum between possibility and probability, and it is established when the court is able to draw a reasonable inference that the defendant may be liable for the conduct alleged. *Id.* The complaint need not include detailed factual allegations, but the factual allegations must be more than a formulaic recitation of the elements of a cause of action and must raise a plausible right to relief above the speculative level. *Id.*

**Collateral Estoppel**

The defendant argues that plaintiff's claims for intentional and negligent infliction of emotional distress are barred by the doctrine of collateral estoppel based upon the dismissal of those claims in the Frederick County Circuit Court. (Dkt. No. 10, at 7-8.) Ironically, while plaintiff makes much to do about his voluntarily dismissing WhitePages from the state court proceedings before final disposition was reached, he argues that the defenses raised by WhitePages are, themselves, barred by collateral estoppel. (Dkt. No. 19-1, at 17.)

Under Virginia law, the doctrine of collateral estoppel precludes parties to a prior action from litigating in a subsequent action any factual issue that was actually determined and essential to a valid, final judgment in the prior action. For the doctrine to apply, the following requirements must be established: (1) the parties to the prior and subsequent proceedings, or their privies, must be the same; (2) the factual issue sought to be litigated actually must have been

9

litigated in the prior action; (3) the factual issue must have been essential to the judgment in the prior proceeding; and (4) the prior action must have resulted in a judgment that is valid, final, and against the party against whom the doctrine is sought to be applied. *See Scales v. Lewis*, 261 Va. 379, 382-383 (2001); *TransDulles Center, Inc. v. Sharma*, 252 Va. 20, 22-23 (1996); *In re Duncan*, 448 F.3d 725, 728 (4th Cir. 2006); *Anderson v. LeGrand*, No. 1:11cv1169, 2012 WL 529812, at *4 (E.D.Va. February 17, 2002). In addition to these elements, there also must be "mutuality," *i.e.*, a litigant cannot invoke collateral estoppel unless he would have been bound had the litigation of the issue in the prior action reached the opposite result. *Id.*; *See also Weinberger v. Tucker*, 510 F.3d 486, 494-495 (4th Cir. 2007) (mutuality does not necessarily require the same parties, so long as both parties were bound by the prior ruling). Nevertheless, courts have acknowledged that, "the mutuality doctrine should not be mechanistically applied when it is Compellingly (sic) clear from the prior record that a party in subsequent civil action against whom collateral estoppel is asserted has fully and fairly litigated and lost an issue of fact which was essential to the prior judgment." *Bates v. Devers*, 214 Va. 667, 671 fn7 (1974); *See also Lee v. Winston*, 717 F.2d 888, 895 (4th Cir. 1983); *Graves v. Associated Transport, Inc.*, 344 F.2d 894 (4th Cir. 1965); *Hozie v. Preston*, 493 F.Supp. 42, 45 (W.D.Va. 1980).

As an initial matter, plaintiff's effort to use collateral estoppel offensively in this case is misguided. Plaintiff seems to be asking that this court take the state court's interlocutory denial of WhitePages' motions to dismiss without prejudice as dispositive of its defense in this case, even though plaintiff later nonsuited WhitePages from the case. (Dkt. Nos. 19-1, at 7-10; 19-2, at 8, 10, 12; 20, at 4.) These are not such final dispositive actions by a court upon which plaintiff can premise his argument for application of the doctrine of collateral estoppel against WhitePages.

10

The defendant's collateral estoppel defense is a bit more complicated. WhitePages was a party defendant along with Verizon in the prior state court action. However, after various interlocutory rulings by the state court on certain motions but prior to disposition of the motions filed by Verizon, and prior to disposition of the case, plaintiff voluntarily nonsuited WhitePages. (Dkt. No. 19-2, at 14.) Thereafter, and seeing his emotional distress claims dismissed by the court, plaintiff settled his nuisance claim with Verizon.

Certainly, plaintiff believed that Verizon and WhitePages had some form of relationship, and there is no debate that at some point WhitePages acquired the incorrect telephone and address listing for plaintiff from Verizon. However, the record before this court does not demonstrate that the defendant's interests are so identical with those of Verizon that they represent the same legal rights. *See State Farm Fire & Cas. Co. v. Mabry*, 255 Va. 286, 289-290 (1998). Instead, WhitePages has asserted that Verizon, not WhitePages, created the inaccurate information, and that it merely was a third party publisher. (Dkt. No. 20, at 5.); *See State Farm*, 255 Va. at 289-290. The undersigned will deal more with these facts later when it considers WhitePages' CDA immunity defense. Suffice it to say that WhitePages, in its own pleading, has distanced itself enough from Verizon to dispel any notion of its privity with Verizon under Virginia law, thus eroding justifiable reliance on collateral estoppel to bar plaintiff's emotional distress claims in this court.

Requirements 2, 3, and 4 are all closer issues. The underlying facts providing the basis for plaintiff's state law causes of action were the same and were essential to the state court's ultimate decision relating to plaintiff's emotional distress claims. (Dkt. No. 11-2, at 2.) In the prior case, plaintiff described WhitePages' listing of his telephone number as that of Comcast Phone of Virginia for which he received thousands of calls, which also provided the basis for his

11

state law tort claims against Verizon's for its alleged conduct contributing to the listing. *Id.* at 2-3.

The state court concluded that plaintiff did not state a claim for relief against Verizon on either for negligent or for intentional infliction of emotional distress, and the court set forth several reasons in support. First, the court believed that, as a telecommunications company, Verizon did not owe plaintiff, who was not a subscriber or otherwise in relationship under contract with Verizon, any duty to list his telephone number correctly.[6] (Dkt. No. 11-2, at 3-4.) Also, the court found that plaintiff had failed to produce any evidence against Verizon upon which any "reasonable person could find that the negligent listing of a telephone number was 'so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* at 5-6. By the same token, the court also ruled that Nasser had stated a cause of action for nuisance against Verizon and declined to dismiss that claim. *Id.* at 6. Plaintiff did not appeal this ruling and settled with Verizon on his remaining nuisance claim.

While there appears at first blush support for the argument that the relevant and essential factual issues between the prior state case and this one are the same, the undersigned has difficulty under these circumstances finding mutuality of the parties or of their interests. Though WhitePages had been a party defendant when the case was filed, it was non-suited prior to the

---

[6] One could argue that a key element of the court's decision was the fact that Verizon is a telecommunications company. (Dkt. No. 11-2, at 2-3.) WhitePages has taken the position in this case that it is an interactive computer services provider and not a telecommunications carrier subject to regulation as such. *See America Online, Inc. v. GreatDeals.Net*, 49 F.Supp.2d 851, 856-857 (E.D.Va. 1999) (information service providers such as AOL are not common carriers and thus are not subject to the same regulation as a common carrier or telecommunications carrier).

12

court's decision on the motions filed by Verizon. The ruling could not have bound WhitePages in any way. Accordingly, there is no mutuality of the parties.

The Supreme Court of Virginia has acknowledged a modern trend in other jurisdictions which has embraced abrogation mutuality where collateral estoppel is used defensively, as defendant attempts to do here. *See Bates v. Devers*, 214 Va. 667, 671 fn7 (1974); *Norfolk and W. Ry. Co. v. Bailey Lumber Co.*, 221 Va. 638, 641 (1980). However, the Virginia Supreme Court specifically has declined to follow the national trend and has continued to require mutuality between the parties for the doctrine of collateral estoppel to apply. *Norfolk*, 221 Va. at 641; *Rawlings v. Lopez*, 267 Va. 4, 4-5 (2004); *Ayala v. Aggressive Towing and Transport, Inc.*, 276 Va. 169, 173 (2008); *Historic Green Springs, Inc. v. U.S. E.P.A.*, 742 F.Supp.2d 837, 849-850 (W.D.Va. 2010). When coupled with the lack of privity between WhitePages and Verizon, the defendant's attempt to employ collateral estoppel to bar plaintiff's emotional distress claims is unavailing. The motion to dismiss on this ground should be DENIED, and it is so RECOMMENDED.

**CDA Immunity**

The defendant also argues that it is entitled to immunity under Section 509 of the Communications Decency Act of 1996, 47 U.S.C. § 230 (most commonly referred to as "Section 230").[7] Section 230:

> [C]reates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, law suits seeking to hold a service provider liable

---

[7] Though the immunity in question arises from Section 509 of the Act, it is almost universally referred to as Section 230 immunity. Accordingly, the undersigned will refer to it by that name hereafter.

13

for its exercise of a publisher's traditional editorial functions such as deciding whether to publish, withdraw, postpone or alter content-are barred.

*Zeran v. American Online Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

An interactive computer service is defined as, "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). An internet content provider is defined as, "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). A court must consider three elements in determining immunity under Section 230: (1) whether the defendant is a provider of an interactive computer service; (2) whether the postings at issue are information provided by another information content provider; and (3) whether the plaintiff seeks to treat the defendant as a publisher or speaker of third party content. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F.Supp.2d 544, 548 (E.D.Va. 2008). Section 230 immunity should be resolved at "the earliest possible stage of the case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-255 (4th Cir. 2009).

Plaintiff does not dispute that the defendant is an interactive computer services provider. Moreover, he seeks to treat the defendant as a publisher of the listed information. However, plaintiff argues that the defendant is not entitled to Section 230 immunity, because he believes it altered the listings (specifically changing "Comcast Phone of Virginia" to "Comcast Phont of Virginia") and failed to comply with the requirements of the statute to voluntarily monitor offensive material by failing to remove the incorrect listings when so informed both by plaintiff

and the state court. (Dkt. Nos. 5-3, at 8-10; 19-1 at 15-16.) As said, if a party is responsible in whole or part for the creation or development of content placed on its website, it may be found to be an information content provider and not entitled to immunity. 47 U.S.C. § 230(f)(3)

Here, both parties admit that the source of the "Comcast Phone of Virginia" listing was Verizon rather than the defendant. (Dkt. No. 11-2, 1-2; 11-3, at 1-2; 20, at 5.) Yet, unlike many other cases involving Section 230 immunity, Verizon was not a third party user of the defendant's website who posted the listings outside of the defendant's control. It appears that Verizon provided the information to the defendant who then, itself, undertook to post the information on its website and to distribute it to other parties without crediting Verizon. (Dkt. No. 5-3, at 3-5; 11-3, at 1.) While such control over content stretches the boundaries of Section 230 immunity, courts have found that an interactive service provider who solicits, pays for, edits, and generally maintains active control over the content of its website may continue to assert immunity from liability. *See Blumenthal v. Drudge*, 992 F.Supp. 44, 49-53 (D.D.C. 1998) ( "Congress decided not to treat providers of interactive computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing or distributing obscene or defamatory material written or prepared by others."); *Zeran v. American Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone or alter content-are barred."); *See also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257-258 (4th Cir. 2009) (plaintiff required to plead facts that the defendant performed something more than its traditional editorial function). Additionally, plaintiff has not alleged that the defendant encouraged inaccurate or defamatory posts, which could remove it from the protection of the Section 230

15

immunity. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257-258 (4th Cir. 2009).

It should be noted that courts have found that Section 230 provides immunity to a wide range of claims for relief, including those for negligence, infliction of emotional distress, and nuisance. *See Zeran v. American Online Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."); *Delfino v. Agilent Techns. Inc.*, 145 Cal.App.4th 790, 806-807 (2006) (immunity to negligent and intentional infliction of emotional distress claims); *Prickett v. InfoUSA, Inc.*, 561 F.Supp.2d 646 (E.D.Tex. 2006) (immunity to negligence and intentional infliction of emotional distress claims); *Dart v. Craigslist, Inc.*, 665 F.Supp.2d 961, 968-970 (N.D.Ill. 2009) (immunity to public nuisance claims). Accordingly, the undersigned finds that the defendant is entitled to immunity under Section 509 of the Communications Decency Act of 1996, 47 U.S.C. § 230.

As stated above, WhitePages has acknowledged that promissory estoppel has been found in some jurisdictions to provide an exception to Section 230 immunity,[8] though, in the same breath, it quickly reminds this court that promissory estoppel is not recognized in Virginia. The defendant is correct. *See W.J. Schafter Associates, Inc. v. Cordant, Inc.*, 254 Va. 514, 521 (1997). *Nguyen v. CNA Corp.*, 44 F.3d 234, 241 (4th Cir. 1995); *Browning v. Federal Nat. Mortg. Ass'n*, No. 1:12cv00009, 2012 WL 1144613, at *3 (W.D.Va. April 5, 2012). Plaintiff takes the position that this court should apply the law of the State of Washington which, unlike Virginia, recognizes promissory estoppel because WhitePages' alleged promises to take corrective action originated there. (Dkt. No. 19-1, at 14.)

---

[8] Citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009).

When the jurisdiction of this court is premised on diversity of citizenship, the court is to apply the substantive law of the forum state, including its choice of law rules. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *Colgan Air, Inc. v. Raytheon Aircraft, Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Virginia follows the *lex loci delicti* doctrine which calls for the application of the law of the place of the wrong. *McMillan v. McMillan*, 219 Va. 1127, 1128 (1986).

Here, plaintiff's claims are premised entirely on the law of Virginia, and he has relied on Virginia law in an effort to defend his claims against the motions to dismiss, except when asking the court to apply promissory estoppel principles of another state to prevent Section 230 immunity from attaching. Moreover, the alleged action taken by WhitePages related to Virginia telephone listings, and plaintiff already has litigated a portion of the case in the Virginia courts where he sought relief under Virginia law. The undersigned is of the view that whatever wrong is alleged to have occurred, it occurred in Virginia. Accordingly, the law of Virginia altogether should be applied. *See Cunningham v. Delhaize America, Inc.*, No. 3:12cv00004, 2012 WL 4503150, at *2 (W.D. Va. September 27, 2012). Unfortunately for plaintiff, Virginia law does not recognize promissory estoppel. The immunity against suit under the CDA applies, and WhitePages' motion to dismiss should be granted. It is so RECOMMENDED.

**SUMMARY**

For the reasons set forth above, the undersigned RECOMMENDS that an Order enter DENYING plaintiff's motions, GRANTING the defendant's motion under the CDA, and DISMISSING plaintiff's action from the docket of the court

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within

fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

12-20-2012
Date