IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MICHAEL J. NASSER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 5:12cv097 |
| | ) | |
| v. | ) | |
| | ) | |
| WHITEPAGES, INC., | ) | By: Hon. Michael F. Urbanski |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

In this emotional distress and nuisance action, plaintiff Michael J. Nasser, Sr. ("Nasser"), proceeding pro se, alleges that defendant WhitePages, Inc. ("WhitePages") incorrectly listed his address and telephone number as that of "Comcast Phone of Virginia" and "Comcast Phont of Virginia," incorrectly listed his wife as being an employee of a company called "Nastrib," and incorrectly listed another woman as residing at Nasser's address. Despite numerous requests to remove the incorrect listings, they remained on the WhitePages' website from October 2, 2009 to February 17, 2011. As a result of WhitePages' failure to remove the incorrect listings, Nasser received thousands of unwanted phone calls intended for Comcast. Nasser alleges that these unwanted calls required him to seek medical treatment for various ailments. Nasser seeks an award of $500,000 in compensatory and punitive damages under Virginia law for intentional infliction of emotional distress, negligent infliction of emotional distress, and nuisance.

Nasser first instituted this action in the Circuit Court of Frederick County, Virginia, jointly against WhitePages and Verizon Virginia, Inc. ("Verizon"). Both defendants sought dismissal of all causes of action. On February 8, 2012, Nasser nonsuited his state law claims against WhitePages. On March 21, 2012, Nasser settled the nuisance claim against Verizon after

the court determined that Nasser had failed to state a claim against Verizon for intentional infliction of emotional distress and negligent infliction of emotional distress.

On August 6, 2012, Nasser refiled this action in the Circuit Court of Frederick County, this time solely against WhitePages. On August 13, 2012, after the complaint was filed, local counsel for WhitePages obtained a copy of the complaint from the clerk of the circuit court. The case was removed from state court on September 7, 2012. On September 27, 2012, Nasser filed a motion for default, contending that WhitePages had failed to timely answer the action. Nasser argues that service was effected on August 13, 2012, the date on which WhitePages' local counsel acquired the complaint from the circuit court. (Dkt. No. 6.)

On October 1, 2012, this matter was referred to the Honorable B. Waugh Crigler, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. On October 2, 2012, WhitePages filed a motion to dismiss for failure to state a claim. (Dkt. No. 9.) On October 5, 2012, Nasser filed another motion for entry of default. (Dkt. No. 15.) After a hearing on the motions, the magistrate judge filed a Report and Recommendation on December 20, 2012, recommending that Nasser's motions for default be denied and that WhitePages' motion to dismiss for failure to state a claim be granted. (Dkt. No. 26.) Nasser filed his objection on February 5, 2013. (Dkt. No. 31.) Having reviewed the pleadings, Report and Recommendation, and Nasser's objection, the court concludes that the Report and Recommendation must be adopted in part and rejected in part.

## I.

As to Nasser's motions for default, the magistrate judge correctly concluded that both motions should be denied because Nasser had not attempted to serve WhitePages, much less effected proper service. Moreover, the magistrate judge noted that local counsel's acquisition of

a copy of a filed complaint from the circuit court is insufficient to constitute service where WhitePages did not waive service of process and local counsel had no authority to accept service.

In his objection, Nasser argues that WhitePages was served for two reasons.[1] First, Nasser argues, contrary to the finding of the magistrate judge, he attempted to serve WhitePages by emailing counsel a "draft" complaint prior to its filing in state court. As noted by the magistrate judge, "the rules governing service of process are there to be followed, and plain requirements for effecting service of process may not be ignored." Spooltech, LLC v. UPS Ground Freight, Inc., No. 7:12cv00104, 2012 WL 4460416, at *3-4 (W.D.Va. July 23, 2012) (internal citations omitted). Emailing a "draft" to counsel prior to the filing of a complaint is not consistent with the plain requirements for effecting service of process under Virginia law. As Nasser did not comply with the rules governing service, it is clear that WhitePages had not been served at the time Nasser filed his motions for default.

Second, Nasser argues that WhitePages accepted service when it removed this action to federal court. The filing of a removal petition does not cure a defect in service or constitute a waiver of the right to object to service of process. City of Clarksdale v. BellSouth Telecomm., Inc., 428 F.3d 206, 214 n. 15 (5th Cir. 2005) (citing Morris & Co. v. Skandinavia Ins. Co., 279 U.S. 405, 409 (1929)). Moreover, "[t]he law disfavors default judgments as a general matter." Tazco, Inc. v. Director, Office of Workers Comp. Program, U.S. Dep't of Labor, 895 F.2d 949, 950 (4th Cir. 1990). The Fourth Circuit Court of Appeals has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Prep. Academy, Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417

---

[1] Plaintiff reiterates several arguments already heard and considered by the magistrate judge. The court will not address those arguments again as they are aptly dealt with in the Report and Recommendation.

(4th Cir. 2010). Accordingly, there is no error in the conclusion of the magistrate judge that the default judgment motions be denied, and the recommendation in that regard is adopted.

**II.**

The next issue to be addressed is that of collateral estoppel. On October 2, 2012, WhitePages filed a motion to dismiss arguing that Nasser was collaterally estopped from asserting his claims given the past adjudication in state court. In response, Nasser countered that WhitePages was collaterally estopped from raising its defenses given the outcome of the state court action against Verizon. The magistrate judge found that (1) Nasser was not collaterally estopped from pursuing his claim against WhitePages based on the findings by the circuit court on the claims against Verizon after WhitePages had been dismissed from the state court action; and (2) WhitePages was not collaterally estopped from raising its various defenses because the state court issued no final disposition on its defenses prior to Nasser's nonsuit. Plainly, the magistrate judge correctly analyzed the dueling invocations of collateral estoppel and properly concluded that this doctrine had no application to this case. As such, this aspect of the report and recommendation is adopted.

**III.**

Finally, WhitePages argues that the Communications Decency Act, 47 U.S.C. § 230(c)(1) (hereinafter "Section 230"), renders it immune from liability in this case. Section 230 prohibits a "provider or user of an interactive computer service," from being held responsible "as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). See also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 519 F.3d 250, 254 (4th Cir. 2009); Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997). The magistrate judge found that Section 230 immunity barred Nasser's claims, noting that "[p]laintiff

4

does not dispute that the defendant is an interactive computer services provider." Report and Recommendation, Dkt. No. 26, at 14.

The court has reviewed the pleadings, the briefs, and the transcript of the hearing before the magistrate judge and finds that the record at this stage of the proceeding does not provide sufficient support for this conclusion of the magistrate judge.

Nasser alleges that WhitePages has functioned as an information content provider, to which Section 230 immunity does not apply. Complaint, Dkt. No. 1-1, at ¶ 22. "[A]n interactive computer service that is also an information content provider of certain content is not immune from liability arising from publication of that content." Federal Trade Commission v. Accusearch, Inc., 570 F.3d 1187, 1197 (10th Cir. 2009) (citing Fair Housing Council v. Roommates.com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2008); Ben Ezra, Weinstein & Co., Inc. v. America Online, Inc., 206 F.3d 980 985 n.4 (10th Cir. 2000). As Nasser has alleged that WhitePages is an information content provider lacking Section 230 immunity, the court must examine the allegations to determine whether the claim is plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

At this stage, the court cannot determine how WhitePages functions and whether it qualifies as an interactive computer service as that term is used in the statute. Section 230 immunity may well apply to WhitePages, but the record at this point does not permit the court to reach that conclusion. Indeed, a number of cases addressing the issue of the application of Section 230 immunity have done so at the summary judgment stage. See, e.g., Federal Trade Commission v. Accusearch, Inc., 570 F.3d 1187 (10th Cir. 2009); Carafano v. Metrosplash.com, Inc., 207 F. Supp. 1955 (C.D. Cal. 2002). But see Universal Communication Systems, Inc. v. Lycos, Inc., 478 F.3d 413 (1st Cir. 2007).

5

Although the Fourth Circuit Court of Appeals affirmed the dismissal of the Zeran v. America Online, Inc. case on the pleadings, there was no factual dispute in that case regarding application of Section 230 immunity as it was alleged that AOL functioned as the prototypical interactive computer service qualifying for statutory immunity. In Zeran, an unidentified person posted a message on an AOL bulletin board advertising offensive T-shirts shortly after the April 1995 Oklahoma City bombing, resulting in ongoing, threatening phone calls directed to plaintiff Zeran. In that case, there was no factual dispute that AOL was an interactive computer service operating a bulletin board, and that it was not the provider of the content. The issue in Zeran was whether Section 230 immunity was available to AOL functioning, according to Zeran, as a distributor rather than publisher, of the offensive content. The Zeran court rejected this argument, finding that AOL fell squarely within the traditional definition of a publisher and was clearly protected by Section 230 immunity. 129 F.3d at 332.

Nor does Nemet Chevrolet suggest a contrary result at this stage of the proceedings. There was no dispute in Nemet that Consumeraffairs.com was an interactive computer service. Here, in contrast, the record available to the court does not allow it to reach that conclusion. In short, unlike in Nemet, factual development is necessary as to the operation of the WhitePages website so that the court may ascertain whether it functions as an interactive computer service. In addition, this case raises factual issues as to whether WhitePages was responsible for changing the telephone listing from "Comcast Phone of Virginia" to "Comcast Phont of Virginia" or engaging in any other development of the Nasser information disqualifying WhitePages from enjoying Section 230 immunity. In short, a limited amount of factual development is necessary in this case to resolve the preliminary issue as to the applicability of Section 230 immunity.

Thus, the court believes that the existing record does not contain a sufficient factual predicate to conclude that Section 230 immunity applies to this case. The factual issues which need to be addressed include: (1) whether WhitePages is an interactive computer service; (2) whether WhitePages is an information content provider; and (3) whether WhitePages was responsible for the development of the incorrect telephone listings involving Nasser's telephone number.

The cases teach that the issue of Section 230 immunity be dealt with early on in the case. For example, in <u>Nemet</u>, the Fourth Circuit Court of Appeals stressed the need "to resolve the question of Section 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'" 591 F.3d at 255 (quoting <u>Roommates.com</u>, 521 F.3d at 1175). In order to meet this requirement, the court sets the following schedule in this case:

(1) WhitePages is directed to file an Answer within fourteen (14) days of the date of entry of the accompanying Order.

(2) The parties are permitted to engage in preliminary discovery limited to the issue of the application of Section 230 immunity until July 31, 2013.

(3) The parties are directed to file motions for summary judgment and supporting memoranda directed to the issue of Section 230 immunity on or before August 16, 2013.

(4) Following review of the motions and memoranda, the court will decide whether oral argument on the motions is necessary.

The Clerk is directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record and plaintiff, proceeding pro se.

Entered: May 23, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge