IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MICHAEL J. NASSER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 5:12cv097 |
| | ) | |
| v. | ) | |
| | ) | |
| WHITEPAGES, INC., | ) | By: Hon. Michael F. Urbanski |
| | ) | United States District Judge |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court on cross motions for summary judgment filed by the pro se plaintiff Michael J. Nasser, Sr. ("Nasser") (Dkt. # 43), and defendant WhitePages, Inc. ("WhitePages") (Dkt. # 38). Because Nasser's tort claims are barred by the immunity provided by the Communications Decency Act, 47 U.S.C. § 230, and because his promissory estoppel claim is not recognized under Virginia law, the court will deny his motion for summary judgment and grant WhitePages's motion for summary judgment.

### I. Facts and Procedural Background

In this emotional distress and nuisance action, Nasser alleges that WhitePages incorrectly listed his address and telephone as that of "Comcast Phone of Virginia" and "Comcast Phont of Virginia." Despite numerous requests to remove the incorrect listings, they remained on WhitePages's website from October 2, 2009, to February 17, 2011. As a result of WhitePages's failure to remove the incorrect listings, Nasser received thousands of unwanted phone calls

intended for Comcast. Nasser alleges that these unwanted calls required him to seek medical treatment for various ailments.

Nasser first instituted this action in the Circuit Court of Frederick County, Virginia, jointly against WhitePages and Verizon Virginia, Inc. ("Verizon"). On February 8, 2012, Nasser nonsuited his state law claims against WhitePages. On March 21, 2012, Nasser settled the nuisance claim against Verizon after the state court determined that Nasser had failed to state a claim against Verizon for intentional infliction of emotional distress and negligent infliction of emotional distress.

Nasser refiled this action in the Circuit Court of Frederick County on August 6, 2012, this time solely against WhitePages. The case was removed from state court on September 7, 2012. On October 2, 2012, WhitePages filed a motion to dismiss for failure to state a claim. (Dkt. # 9). In an order and memorandum opinion dated May 23, 2013, the court dismissed both of Nasser's motions for default, and dismissed both parties' motions for dismissal based on collateral estoppel. The court ordered discovery on WhitePages's defense that Nasser's claim was barred by Section 230 immunity. (Dkt. # 32).

On August 15, 2013, WhitePages filed a motion for summary judgment. (Dkt. # 38). The next day Nasser also filed a motion for summary judgment. (Dkt. # 43). WhitePages filed its opposition to Nasser's motion for summary judgment (Dkt. # 45) on August 30, 2013, and on September 4, 2013, Nasser filed a supplemental response to WhitePages's motion for summary judgment. (Dkt. # 48). On September 13, 2013, WhitePages filed a reply in support of its motion for summary judgment. (Dkt. # 49). Nasser responded on October 2, 2013 with a motion to quash WhitePages's reply in support of its motion for summary judgment, or in the alternative,

2

to grant Nasser leave to respond to WhitePages's motion. (Dkt. # 50).[1] This requested response was filed with the motion. (Dkt. # 50-1).

For the reasons set forth below, the court grants WhitePages's motion for summary judgment and denies Nasser's motion for summary judgment.

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236–37 (4th Cir. 1995). The court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial." Id. All reasonable inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

---

[1] The court will deny the motion to quash insofar as it seeks to strike the defendant's response, and will consider all the pleadings filed, including the response filed by plaintiff on October 2, 2013, (Dkt. #50-1).

3

Where the issue is one of immunity under Section 230 of the Communications Decency Act, courts "aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quoting Fair Housing Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157, 1175 (9th Cir. 2008)). The immunity at issue here "is an immunity from suit rather than a mere defense to liability and it is effectively lost if a case is erroneously permitted to go to trial." Id. at 254 (internal quotations and emphasis omitted).

### III. Discussion

WhitePages is an interactive computer service and therefore qualifies for Section 230 immunity. This immunity is not forfeited because WhitePages is not an information content provider. Liability is also unavailable on the theory of promissory estoppel because Virginia does not recognize the doctrine.

*A. WhitePages Qualifies for Section 230 Immunity.*

The Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), directs that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (1998). "Interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." Id. § 230(f)(2). To determine if Section 230 immunity attaches, the court must determine: "1) whether Defendant is a provider of an interactive computer service; 2) if the postings at issue are

information provided by another information content provider; and 3) whether Plaintiff[']s claims seek to treat Defendant as a publisher or speaker of third party content." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 564 F. Supp. 2d 544, 548 (E.D. Va. 2008).

WhitePages is clearly an interactive computer service within the meaning of the statute. Its website is an "information service" that enables multiple users to access the data on its servers. This data is created and provided by third parties. The plaintiff does not dispute that WhitePages is an interactive computer service, but rather asserts that WhitePages is also an information content provider.

> B. *WhitePages Does Not Lose § 230 Immunity as There is No Evidence it Created the Erroneous Telephone Listing.*

An interactive computer service can only claim Section 230 immunity with regard to "information provided by another information content provider." 47 U.S.C. § 230(c)(1); F.T.C. v. Accusearch, Inc., 570 F.3d 1187, 1197 (10th Cir. 2009). "Thus, an interactive computer service that is also an 'information content provider' of certain content is not immune from liability arising from publication of that content." Accusearch, 570 F.3d at 1197. Section 230 describes an information content provider as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

Nasser seeks to prove that WhitePages is an information content provider by pointing to the control it exercised over the offensive listings. Pl.'s Mem. in Supp. of Mot. for Summ. J., Dkt. # 43, at 7–11, 18 (referring to WhitePages's responses to discovery requests). But the Fourth Circuit in Zeran v. America Online, Inc., specifically gave Section 230 immunity to the types of "editorial functions" Nasser is describing. See Zeran, 129 F.3d 327, 330 (4th Cir. 1997) ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional

5

editorial functions–such as deciding whether to publish, withdraw, postpone or alter content–are barred."). Nasser is also unable to produce any evidence that WhitePages created the offensive content. See Pl.'s Res. to WhitePages, Inc.'s First Set of Interrogs. and Req. for Produc. Of Docs. and Things, Dkt. # 40-3, at 6 (responding to a request for documentation to support the claim that WhitePages created the listings at issue, Nasser replied "I never alleged or inferred that you had any part in that, this Defendant, either created or developed the Comcast Phon[e] of Va. listing, therefore I posses [sic] no documentation"). WhitePages, however, has persuasively shown that it receives all of its data from third parties and does not create any content itself. See Azose Supplementary Decl., Dkt. # 46, at 1–2 (describing process for receiving listings from third parties). WhitePages asserts that the changes in the availability of the listings reflect the fluctuating status of its agreements with third parties. See Azose Decl., Dkt. # 39, at 3–4 ("[T]he sources of WhitePages' listings change periodically. Existing agreements with third-party data providers expire or are terminated, and WhitePages continually enters into agreements with new third-party data providers."). The listings at issue were provided by Verizon, as admitted by Nasser in his response to WhitePages's First Request for Admissions. See Pl.'s Resp. to WhitePages, Inc.'s First Set of Req. for Admis., Dkt. # 40-2, at 2 ("Plaintiff has admitted on several occasions, in writing and verbally, that Verizon was the originator of the incorrect listing Comcast Phon[e] of Va., with the Plaintiff's address and telephone number, in both state court and federal court proceedings; it is in the records.").

Neither is immunity lost when the interactive service provider pays a third party[2] for the content at issue, and essentially becomes a "distributor" of the content. See Zeran, 129 F.3d at

---

[2] Among other allegations, Nasser seems to take issue with the financial relationship WhitePages has with some of its third-party data providers. In paragraph 27 of his Memorandum in Support of Summary Judgment Nasser asserts: "WhitePages, Inc. provided the Comcast Phont listing, which they created, to Yellowbook in

332 ("Even distributors are considered publishers for purposes of defamation law."); see also Blumenthal v. Drudge, 992 F. Supp. 44, 51 (D.D.C. 1998) ("Congress has made a different policy choice by providing immunity even where the interactive service provider has an active, even aggressive role in making available content prepared by others."). Accordingly, WhitePages's licensing agreements with third-party data providers are insufficient to remove immunity where the third parties create all the data that WhitePages displays on its websites.

Finally, Nasser asserts that WhitePages's failure to monitor and remove offensive content from its website upon notification by Nasser also results in a loss of its Section 230 immunity. Pl.'s Mem. in Supp. of Mot. for Summ. J., Dkt. # 43, at 12–14. "[O]ne who merely fails to act to protect another is generally not liable for breaching a duty unless there is a special relationship between them giving rise to a duty to act." Mid-Cal Nat. Bank v. Fed. Reserve Bank of San Francisco, 590 F.2d 761, 763 (9th Cir. 1979). No contractual relationship exists between Nasser and WhitePages that would give rise to such a duty. Furthermore, the court in Zeran specifically rejected the kind of "notice-based liability" that Nasser is seeking to enforce here. Zeran, 129 F.3d at 333 ("Because the probable effects of distributor liability on the vigor of Internet speech and on service provider self-regulation are directly contrary to § 230's statutory purposes, we will not assume that Congress intended to leave liability upon notice intact.").

*C. Promissory Estoppel Argument Unavailable.*

Nasser argues that WhitePages is liable under the doctrine of promissory estoppel based of the conversation he had with a WhitePages customer service representative on October 28, 2009. Nasser argues that during this conversation, the representative told him she had removed the offensive listings from the WhitePages website, and that Nasser took no further action to

---

November , [sic] 2010, through their intermediary DirectoryAssisstance.com [sic] *for monetary gain.*"  Pl.'s Mem. in Supp. of Mot. for Summ. J., Dkt. # 43, at 11 (emphasis added).

7

mitigate his injury in reliance on this promise. Pl.'s Mem. in Supp. of Mot. for Summ. J., Dkt. # 43, at 3–6. Nasser argues that a contract was thus formed on the basis of promissory estoppel. He argues that the contract has been breached and that Section 230 immunity does not shield WhitePages from a breach of contract claim. Nasser further argues that because the representative and website servers are located in Washington state, which recognizes promissory estoppel as a cause of action, Virginia would allow his promissory estoppel claim under its choice-of-law rules.

The Ninth Circuit encountered a similar argument in <u>Barnes v. Yahoo!, Inc.</u>, 570 F.3d 1096 (9th Cir. 2009). In <u>Barnes</u>, plaintiff requested Yahoo to remove unauthorized photos of her posted by her ex-boyfriend on a Yahoo-run website. <u>Id.</u> at 1098. Yahoo promised to remove the photos but failed to do so after two months. <u>Id.</u> Barnes brought negligent non-provision of services and promissory estoppel claims against Yahoo, but the district court dismissed the suit on the rationale that Yahoo had Section 230 immunity. <u>Id.</u> at 1099. On appeal, Barnes argued that Section 230 only applies when a plaintiff in a lawsuit seeks to treat the internet service provider as a "publisher or speaker" and that her promissory estoppel claim did not rely on Yahoo's role as a publisher. <u>Id.</u> at 1102. The court of appeals agreed and allowed Barnes's promissory estoppel claim to go forward, stating that "[s]ubsection 230(c)(1) creates a baseline rule: no liability for publishing or speaking the content of other information service providers. Insofar as Yahoo made a promise with the constructive intent that it be enforceable, it has implicitly agreed to an alteration in such baseline." <u>Id.</u> at 1008–09.

This route around Section 230 immunity is, however, unavailable to Nasser because Virginia does not recognize promissory estoppel as a cause of action. <u>W.J. Schaffer Assocs., Inc. v. Cordant, Inc.</u>, 254 Va. 514, 521, 493 S.E.2d 512, 516 (1997) ("[W]e hold that promissory

8

estoppel is not a cognizable cause of action in the Commonwealth, and we decline to create such a cause of action."). Nasser argues that Washington law should apply and that promissory estoppel is a recognized cause of action in that state. See Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wash. 2d 255, 258–59, 616 P.2d 644, 646 (1980) (discussing the doctrines of equitable and promissory estoppel). However, a review of the applicable conflict of law rules confirms that Virginia law applies.

A federal court sitting in diversity must turn to state law so that "litigation of state-based rights in federal court does not yield results materially different from those attained in the state courts." Johnson v. Hugo's Skateway, 974 F.2d 1408, 1416 (4th Cir. 1992) (citing Erie R.R. Co. v. Thompkins, 304 U.S. 64, 68 (1938)). Accordingly, the court turns next to Virginia's conflict of law rules to determine if Washington State law is appropriate to evaluate this promissory estoppel claim.

"It is a long-standing rule in Virginia that '[t]he nature, validity and interpretation of contracts are governed by the law of the place where [the contract was] made . . . .'" Black v. Powers, 48 Va. App. 113, 128, 628 S.E.2d 546, 554 (2006) (quoting C.I.T. Corp. v. Guy, 170 Va. 16, 22, 195 S.E. 659, 661 (1938)). The place where the contract was made is where the final act necessary to make the contract occurred. See KECO Indus., Inc. v. ACF Indus., Inc., 316 F.2d 513, 514 (4th Cir. 1963); Chesapeake Supply & Equip. Co. v. J.I. Case Co., 700 F. Supp. 1415, 1417 (E.D. Va. 1988); Wellmore Coal Corp. v. Gates Learjet Corp., 475 F. Supp. 1140 (W.D.Va.1979). In Pro Football Inc. v. Paul, the Virginia Court of Appeals noted that because the final act necessary to form the employment occurred in Virginia, the contract was "made" in Virginia. Pro Football Inc., 39 Va. App. 1, 10, 569 S.E.2d 66, 71 (2002).

Many courts take the approach that promissory estoppel is a type of contract claim. See Whitney v. Guys, Inc., 700 F.3d 1118, 1122 (8th Cir. 2012) (affirming the district court's characterization of promissory estoppel as a quasi-contract claim and application of Minnesota's choice of law rules); Underhill Inv. Corp. v. Fixed Income Disc. Advisory Co., 319 Fed. Appx. 137, 141 (3d Cir. 2009) (unpublished decision) (applying Delaware's choice of law rules for contracts in a "quasi-contract suit" of promissory estoppel); Steinke v. Sungard Fin. Sys., Inc., 121 F.3d 763, 775 (1st Cir. 1997) ("[P]romissory estoppel is a contract-based cause of action.") (internal quotation marks omitted); I.K. ex rel B.K. v. School Dist. Of Haverford Tp., 2013 WL 4194925, at *22 (E.D. Pa. 2013) (holding that promissory estoppel "implies a contract in law where no contract exists in fact") (internal quotation marks omitted); Mellon v. Cessna Aircraft Co., 7 F. Supp. 2d 1180, 1182 (D. Kan. 1998) ("A promissory estoppel claim is a contract claim under Kansas law.").

The doctrine of promissory estoppel, as defined by the Second Restatement of Contracts, provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." See W.J.Schaffer Assocs., 254 Va. at 520–21, 493 S.E.2d at 516 (citing Restatement (Second) of Contracts § 90(1) (1981)). Thus, in order to prove promissory estoppel, a party must show "an express or implied promise . . . and [the party's] detrimental reliance on that promise." Allen M. Campbell Co., Gen. Contractors, Inc. v. Va. Metal Indus., Inc., 708 F.2d 930, 931 (4th Cir. 1983) (quoting Wachovia Bank & Trust Co. v. Rubish, 306 N.C. 417, 427, 293 S.E.2d 749, 755–56 (1982)). As such, a legal obligation under promissory estoppel is not formed unless and until the promise induces detrimental reliance.

Under Virginia's choice-of-law rules governing contracts, the final component to the promissory estoppel claim, Nasser's reliance, took place in Virginia. Therefore, Virginia law applies and promissory estoppel is unavailable.[3]

## IV.  Conclusion

To be sure, it is unfortunate that Michael Nasser's home telephone number was erroneously linked to the Comcast number and that he and his wife were subjected to incessant phone calls from cable telephone customers. It is likewise a shame that it took Verizon and WhitePages so long to recognize and correct the error.  It is no wonder that Nasser experienced exasperation and frustration.  Regardless of the magnitude of his irritation and his attendant alleged health concerns, however, the law does not afford Nasser a remedy against WhitePages.[4] By enacting the immunity provision of the Communications Decency Act, Congress has made the policy decision to protect interactive computer service providers from claims regarding content provided by another information content provider.  Based on the prevailing law in this circuit, that immunity is applicable to WhitePages.  Nor may WhitePages be sued under a promissory estoppel theory, as Virginia does not recognize such a claim.  Accordingly, an appropriate order will be entered this day **DENYING** summary judgment as to Nasser and **GRANTING** summary judgment as to WhitePages.

---

[3]  As Virginia does not recognize promissory estoppel, it is undecided whether contract or tort conflict of law rules would apply to such a claim.  In this case, however, regardless of which conflict rule is applied, Virginia law governs.  For tort claims, "it is well settled in Virginia that liability for tort depends on the law of the place of injury." Lachman v. Penn. Greyhound Lines, 160 F.2d 496, 500 (4th Cir. 1947); C.I.T. Corp. v. Guy, 170 Va. 16, 22, 195 S.E. 659, 661 (1938) (applying the "general rule which [the court] has frequently followed: Liability for a tort depends on the law of the place of the accident") (internal quotation marks omitted); Sutton v. Bland, 166 Va. 132, 135, 184 S.E. 231, 232–33 (1936) (applying the principles of lex loci). The place of the injury or wrong is defined as "the place where the last event necessary to make an act liable for an alleged tort takes place." Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986) (quoting Miller v. Holiday Inns, Inc., 436 F. Supp. 460, 462 (E.D. Va. 1977) (internal quotations marks omitted).  As Nasser's injury occurred in Virginia, choice of law rules applicable to tort claims likewise point to Virginia.

[4]  It is worth repeating at this point that Nasser settled his nuisance claim against Verizon.

The Clerk is directed to send a certified copy of this Memorandum Opinion to counsel of record and the pro se plaintiff.

Entered: November 21, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge