## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

**MICHAEL J. NASSER, SR.**

     **Plaintiff,**

**v.**
                                        **Civil Action No.: 5:12cv097**

**WHITEPAGES, INC.**

     **Defendant.**

### WHITEPAGES, INC.'S MOTION FOR INJUNCTIVE RELIEF OR, IN THE ALTERNATIVE, MONETARY SANCTIONS

Defendant WhitePages, Inc., by counsel, moves this Court to grant injunctive relief or, in the alternative, monetary sanctions against Plaintiff Michael J. Nasser, pursuant to this Court's inherent power to grant such relief.

The specific grounds for this Motion are more fully set forth in the following Memorandum in Support of WhitePages, Inc.'s Motion for Injunctive Relief or, in the Alternative, Monetary Sanctions.

DATED: January 30, 2014

                             */s/ Timothy J. Battle*
                             Timothy J. Battle, Esq. (VSB #18538)
                             524 King Street
                             Alexandria, Virginia 22314
                             Tel: (703) 836-1216

Fax: (703) 549-3335

*/s/ Sean M. McChesney*
_____
Sean McChesney (admitted *pro hac vice*)
*/s/Venkat Balasubramani*
_____
Venkat Balasubramani (admitted *pro hac vice*)
Focal PLLC
800 Fifth Avenue, Suite 4100
Seattle, Washington 98104
Tel: (206) 617-3040
Fax: (206) 260-3966
Email: sean@focallaw.com
Email: venkat@focallaw.com

*Counsel for WhitePages, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| **MICHAEL J. NASSER, SR.** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.: 5:12cv097** |
| **WHITEPAGES, INC.** | |
| **Defendant.** | |

## WHITEPAGES, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF OR, IN THE ALTERNATIVE, MONETARY SANCTIONS

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION...................................................................................................1

II.     FACTS AND PROCEDURAL BACKGROUND ...............................................2

      A.      Nasser's Earlier Communications with WhitePages Counsel .................................3

      B.      Nasser's Coercive Threats and Eventual Filing of Baseless Bar Complaints .........4

            1.      May 31, 2012 Letter .........................................................................................4

            2.      July 3, 2012 Conference Call and Letter .........................................................5

            3.      July 18, 2012 Letter .........................................................................................5

            4.      July 23, 2012 Letter Hinting at Bar Complaint................................................5

            5.      August 1, 2012 Letter Providing Notice of Intent to File Bar Complaint ...6

            6.      Nasser Files Bar Complaints............................................................................6

      C.      Nasser's January 9, 2014 Letter to WhitePages Counsel .......................................6

III.    DISCUSSION .......................................................................................................7

      A.      Nasser Should Be Required to Seek Leave of Court for Future Filings.................7

            1.      The Court has Authority to Enjoin Further Filings.......................................7

            2.      Nasser's Conduct Warrants the Imposition of an Injunction.......................8

      B.      Alternatively, The Court Should Issue Monetary Sanctions for Nasser's
           Improper Conduct ...............................................................................................11

            1.      The Court has Inherent Authority to Issue Monetary Sanctions...............11

            2.      Nasser's Conduct Merits Monetary Sanctions...........................................12

IV.     CONCLUSION ...................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ballard v. Carlson*,
  882 F.2d 93 (4th Cir. 1989) ................................................... 12

*Ballard v. Volunteers of America*,
  493 U.S. 1084 (1990)................................................................ 12

*Big Dipper Entm't, LLC v. City of Warren*,
  641 F.3d 715 (6th Cir. 2011) ................................................. 14

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991).................................................................. 13

*Cromer v. Kraft Foods North America, Inc.*
  390 F.3d 812 (4th Cir. 2004) .................................................. 9

*Garrett v. Selby Connor Maddux & Janer*,
  425 F.3d 836 (10th Cir. 2005) ............................................... 15

*Haggins v. Tarwater*,
  No. 3:13-cv-00050-MOC-DSC, 2013 U.S. Dist. LEXIS 45668 (W.D.N.C. Mar. 29, 2013) ....... 9

*In re Burnley*,
  988 F.2d 1 (4th Cir. 1992) ....................................................... 8

*Jaffe v. Goodwin*,
  No. 3:03-cv-799, 2004 U.S. Dist. LEXIS 28129 (E.D. Va. Oct. 5, 2004)................................. 12

*LaRouche v. Nat'l Broad. Co., Inc.*,
  780 F.2d 1134 (4th Cir. 1986) ............................................... 12

*Novak v. National Broadcasting Co.*,
  779 F. Supp. 1428 (S.D.N.Y. 1992)....................................... 13

*Patterson v. Aiken*,
  841 F.2d 386 (11th Cir. 1988) ............................................... 12

*Roadway Express, Inc. v. Piper*,
  447 U.S. 752 (1980)................................................................ 12

*Rutledge v. City of Danville*,
  No. 4:13-cv-00066, 2013 U.S. Dist. LEXIS 178643 (W.D. Va. Dec. 20, 2013)..................... 8, 9

*Safir v. United States Lines, Inc.*
  792 F.2d 19 (2d Cir. 1986)............................................... 8, 9, 10, 11

*Silvestri v. General Motors Corp.*,
  271 F.3d 583 (4th Cir. 2001) ................................................... 8

*Stalley v. Methodist Healthcare*,
  517 F.3d 911 (6th Cir. 2008) ......................................................................................... 12

*Strag v. Bd. of Tr.*,
  55 F.3d 943 (4th Cir. 1995) ........................................................................................... 12

*Thomas v. Ford Motor Co.*,
  244 F. App'x 535 (4th Cir. 2007) ................................................................................. 13

*Wiese v. Cmty. Bank of Cent. Wisconsin*,
  552 F.3d 584 (7th Cir. 2009) ......................................................................................... 14

*Zaczek v. Fauquier County*,
  764 F. Supp. 1071 (E.D. Va. 1991) ............................................................................... 12

# I.     <u>INTRODUCTION</u>

Defendant WhitePages, Inc. ("WhitePages") requests this Court to issue injunctive relief against Plaintiff Michael J. Nasser, Sr. ("Nasser"), requiring Nasser to obtain leave of court, upon demonstration of good cause, prior to making any further filings in connection with this action or, in the alternative, to issue monetary sanctions against Nasser for his conduct and abuse of the judicial process during the course of this litigation.[1]  WhitePages previously considered seeking this relief prior to the Court's ruling on the parties' summary judgment motions, but reluctantly decided against it given Nasser's *pro se* status.  However, a recent letter from Nasser has left WhitePages with little choice but to seek this relief.

Nasser chose to file this second lawsuit against WhitePages despite having been advised by multiple attorneys of the lack of viability of his case (according to his own admission—*see infra* Section III(A)(2)).  Furthermore, as Nasser has done in the past with other parties, Nasser has maintained, and continues to maintain this action, not on the merits, but merely to force WhitePages to spend more money and to extract a settlement.  Indeed, in this litigation, while Nasser has portrayed himself to the Court as a hapless *pro se* litigant, privately he has bragged to WhitePages about his numerous victories in litigation with other parties.  Nasser also conducted himself in an uncivil and disrespectful manner, frequently attacking the character of WhitePages' counsel and accusing WhitePages of lying in discovery responses.  In a transparent attempt to extract a settlement from WhitePages, Nasser threatened to file baseless bar grievances against WhitePages' counsel.  When WhitePages refused to give in to Nasser's demands, Nasser filed grievances with the Washington State Bar Association and the State Bar of Virginia.  Both bar

---

[1] As discussed *infra*, WhitePages seeks relief pursuant to the Court's inherent powers, not under 28 U.S.C. §1927, which applies only to attorneys, nor under Rule 11 of the Federal Rules of Civil Procedure, which is available only prior to the conclusion of a case.

associations found no basis for Nasser's complaints.  Thus, while WhitePages would have been justified in seeking relief previously, it initially declined to do so due to Nasser's *pro se* status.

However, a recent letter from Nasser to WhitePages' counsel, sent subsequent to the Court's dismissal of Nasser's claims, has left WhitePages with scant few options other than to seek relief from the Court.  In the letter, Nasser makes clear the true motivation in maintaining his lawsuit against WhitePages—to compel WhitePages to unnecessarily incur legal fees and costs defending against claims that have no legal or factual basis.  Even worse, Nasser boasts about his success in doing so, and states his intention to continue doing so by filing an appeal to the Fourth Circuit:

> I can take extreme satisfaction in knowing that my legal expenses are very miniscual [sic] compared to the phalanx of $300.00 to $500.00 an hour fees commanded by such learned attorneys.  If I stopped litigating now, I will have accomplished satisfaction in knowing that I have cost your client a substantial amount of money to defend his actions, probably in the medium five figures, and going up . . . I am sure your client feels it was worth it, so he should not complain about a few more thousand it will costs him to litigate my appeal with the Fourth Circuit.

In light of this letter, and Nasser's conduct as described herein, WhitePages seeks the relief of this Court in preventing Nasser from further abusing the judicial process, and causing both WhitePages and the courts to expend further time and resources.  WhitePages requests that this Court require Nasser to obtain leave of Court before filing any additional pleadings in this matter, upon demonstration that any such pleading is being made without improper purpose, is in compliance with Rule 11 of the Federal Rules of Civil Procedure, and can survive a challenge under Rule 12 of the Federal Rules of Civil Procedure (if applicable).  Alternatively, WhitePages requests that this Court issue monetary sanctions against Nasser in order to deter Nasser from further abuse of the legal process.

## II.      FACTS AND PROCEDURAL BACKGROUND

Much of the facts and procedural background of this case are familiar to the Court, having been set forth in the Court's November 23, 2013 Memorandum Opinion dismissing Nasser's claims.  (Dkt. No. 51, pp. 1-3.)  Consequently, they will not be recited here.  Additional facts bearing on this Motion are discussed below.

### A.      Nasser's Earlier Communications with WhitePages' Counsel

Throughout this case, Nasser has demonstrated a lack of civility in his conduct and has alleged, without any substantiation, that WhitePages and/or its counsel have lied and provided false information.  Additionally, while portraying himself at times as a mere victim caught up in this litigation, separately he has flaunted his *pro se* status and the fact that he could maintain his suit for little cost while causing WhitePages to expend considerable resources.  He also bragged about his previous successes at extracting settlements in other litigation as a *pro se* plaintiff.  The table below sets forth a number of examples of these statements made by Nasser:

| | |
|---|---|
| "I have never been accused of vexatious litigation; you may rest assured I will wear that title as a badge of honor, you being the person who presented me that accolade." | July 21, 2012 letter to counsel Nathan D. Webb, attached as Ex. A to the Declaration of Sean M. McChesney ("McChesney Decl.") |
| "I was quite intrigued with your threat, that I accept the extremely generous offer or you would hurl the wrath of the gods upon me. Now, I will admit that you didn't get a virgin with threat, I have been had before.  Just in case you might be interested there is a Mr. John Zunka Esquire who tried that tactic a few years back, you might check the extremely generous award that was my good fortune to secure in that matter." | July 21, 2012 letter to counsel Nathan D. Webb, attached as Ex. A to McChesney Decl. |
| "My question is are you a legitimate publisher or are you guilty of devious minds creating fraudulent listing with non-words?  As for me, I would rather be declared a vexatious litigant, seems to have a more sophisticated conatation [sic]." | July 23, 2012 letter to counsel Nathan D. Webb, attached as Ex. B to McChesney Decl., page 3. |

3

| | |
|---|---|
| "I could imagine all the high-fives going around your office when you received the decision that you had prevailed, and I was history.  It is reminiscence [sic] of my case Nasser v. Nationwide Ins. Co.  In that matter, the Court granted summary judgment twice to Nationwide only to withdraw it twice on my Motion for Reconsideration, and they settled on my terms." | July 15, 2013 email to counsel Venkat Balasubramani, attached as Ex. C to McChesney Decl. |
| "In the state court case I offered to settle for $25,000.00 from each of you and Verizon before the Motions in Bar were heard.  We all know the outcome, I was still in on the nuisance claim, so Verizon didn't loss [sic] any time in settling with me for a very handsome sum. (*It has given me the war chess* [sic] *to fight you, not that I really need it, pro se litigants don't charge much.*)" | July 15, 2013 email to counsel Venkat Balasubramani, attached as Ex. C to McChesney Decl. (emphasis added). |
| "Write me check for $90,000 and I will be history.  As you can see, the longer we go, the more demanding I become." | July 15, 2013 email to counsel Venkat Balasubramani, attached as Ex. C to McChesney Decl. |
| "Come on you geniuses, get real.  May I suggest a good pro se litigant to assist in your endeavor . . . I will tell you, for $125,000.00, we will not have to wait for the Court's decision, I will disappear like a cloud of dust." | September 24, 2013 email to counsel Sean M. McChesney, attached as Ex. E to McChesney Decl. |

**B.      Nasser's Coercive Threats and Eventual Filing of Baseless Bar Complaints**

Beginning on May 31, 2012, three months after Nasser nonusuited his first state law

action against WhitePages, Nasser sent a series of letters to WhitePages' counsel attempting to

coerce a settlement, culminating with the threat and actual filing of baseless bar complaints

against WhitePages' counsel.

1.      May 31, 2012 Letter.

Nasser initially sent a letter to counsel for WhitePages in which he re-alleged the same

claims made in the original lawsuit, and alluded to the possibility of a new lawsuit if WhitePages

was unwilling to meet certain settlement demands outlined in his letter.  Balasubramani Decl. ¶

4

2.  WhitePages' counsel subsequently scheduled a conference call with Nasser to discuss his allegations.  *Id.*

> 2.    July 3, 2012 Conference Call and Letter.

On July 3, 2012, WhitePages counsel Venkat Balasubramani and Nathan Webb, held a conference call with Nasser to discuss the issues Nasser raised in his May 31st letter.  Balasubramani Decl. ¶ 3; Webb Decl. ¶ 2.  During the call, WhitePages' counsel explained to Nasser in detail why his claims were not supportable under the law due the immunity afforded by the Communications Decency Act.  *Id.*  Despite this, Nasser pressed unreasonable settlement demands, and the parties ended the phone call without resolution.[2]  *Id.*  That same day, Mr. Nasser sent a letter to Mr. Balasubramani in which he expressed his dissatisfaction with the outcome of the conference call.  McChesney Decl. ¶7, Ex. F.  In the letter, Nasser again threatens to file a new complaint against WhitePages if his demands are not met.  *Id.*  However, Nasser makes absolutely no mention of any allegedly improper conduct by Mr. Balasubramani during the phone call earlier that day.  *Id.*

> 3.    July 18, 2012 Letter.

Two weeks later, Nasser sent another letter to WhitePages' counsel in which he threatens suit.  McChesney Decl. ¶ 8, Ex. G. The letter urges settlement, but is devoid of any allegations of threats or personal attacks made against Nasser by Mr. Balasubramani.  *Id.*

> 4.    July 23, 2012 Letter Hinting at Bar Complaint.

Several days later, Nasser sent another letter to WhitePages' counsel, this time accusing counsel of making false statements before the Circuit Court of Frederick County, Virginia.

---

[2] At no time during the conference call (or at any other time) did either Mr. Balasubramani or Mr. Webb threaten or make a personal attack against Mr. Nasser.  Balasubramani Decl. ¶ 4; Webb Decl. ¶ 3.

McChesney Decl. ¶ 3, Ex. B.  Again, the letter contains no mention of threats or personal attacks against Nasser by Mr. Balasubramani.  *Id.*

     5.    <u>August 1, 2012 Letter Providing Notice of Intent to File Bar Complaint</u>.

Having not extracted his desired settlement from WhitePages, on August 1, 2012, Nasser sent yet another letter to WhitePages' counsel.  McChesney Decl. ¶ 9, Ex. H.  Tellingly, Nasser states that he has decided to file his complaint against WhitePages, but then alludes to the fact that he intends to initiate a bar complaint against WhitePages' counsel.  *Id.*  He purports to send the bar complaint to Mr. Balasubramani as a courtesy, stating that he is "going to give [Mr. Balasubramani] another break."  *Id.*  Yet, the intention from his letter is clear: he will file but not serve his complaint and will file a bar complaint against Mr. Balasubramani unless, of course, WhitePages gives in to his demands.  The letter is devoid of allegations of threats or personal attacks against Nasser by Mr. Balasubramani.  *Id.*

     6.    <u>Nasser files bar complaints</u>.

Five days after his letter to Mr. Balasubramani, on August 6, 2012, Nasser filed a new complaint against WhitePages in the Circuit Court for Frederick County, Virginia.  Twelve days after that, Nasser filed a bar grievance against Mr. Balasubramani with the Washington State Bar Association.  Balasubramani Decl. ¶ 5, Ex. A.  The grievance alleged that Mr. Balasubramani had threatened Mr. Nasser and made "personal attacks" against him.  *Id.*, pg. 1.  It also alleged that counsel for WhitePages had made false statements before the Circuit Court of Frederick County, Virginia.  *Id.*  The Washington State Bar Association found no basis for Nasser's grievance.  Balasubramani Decl. ¶ 6, Ex. B.

Nasser also filed a bar grievance with the Virginia State Bar against attorney Timothy J. Battle, WhitePages' local counsel in this litigation, which, apparently, did not even survive the

intake review process.  *See* Transcript of November 12, 2012 Motions Hearing before Magistrate Judge B. Waugh Crigler (Dkt. No. 23) at 3:24-4:3 ("I filed a complaint with both the Virginia State Bar and Washington Bar Association.  Mr. – I received a letter yesterday from the Virginia State Bar that said that they're not going to entertain anything against Mr. Battle.").

**C.      Nasser's January 9, 2014 Letter to WhitePages Counsel**

On January 9, 2014, subsequent to this Court's dismissal of Nasser's claims, Nasser sent a letter via email to WhitePages' counsel.  McChesney Decl. ¶ 10, Ex. I.  In the letter, Nasser takes a mocking tone, and indicates that he intends to file an appeal with the United States Court of Appeals for the Fourth Circuit.  More than that, Nasser evidences his true motivation in maintaining this lawsuit—to force WhitePages to unnecessarily incur legal fees and costs defending against claims that have no legal or factual basis.  Nasser states "I can take extreme satisfaction in knowing that my legal expenses are very miniscual [sic] compared to the phalanx of $300.00 to $500.00 an hour fees commanded by such learned attorneys."  *Id.*  He further states "[i]f I stopped litigating now, I will have accomplished satisfaction in knowing that I have cost your client a substantial amount of money to defend his actions, probably in the medium five figures, and going up."  *Id.*  Nasser's letter goes on to indicate that he intends to file an appeal with the Fourth Circuit and that WhitePages "should not complain about the few thousand more it will cost [WhitePages] to litigate against my appeal."  *Id.*  In the final paragraph of the letter, Nasser boasts, "rest assured you can never site [sic] me for frivolous litigation, after all this is your party that I have been invited to.  An additional fee of $505.00, plus the additional typing paper can be adequately covered by the war chess [sic] provided by Verizon."  *Id.*  Tellingly, the letter is devoid of any discussion of the facts or issues of the case, the merits of Nasser's claims, or any basis for an appeal.

## III.   DISCUSSION

### A.   Nasser Should Be Required to Seek Leave of Court for Future Filings

WhitePages requests this Court to enjoin Nasser from filing any additional pleadings without first obtaining leave of Court, which leave should be granted only upon demonstration that any such pleading is being made without improper purpose, is in compliance with Rule 11 of the Federal Rules of Civil Procedure, and can survive a challenge under Rule 12 of the Federal Rules of Civil Procedure (if applicable).

#### 1.   The Court has Authority to Enjoin Future Filings.

As this Court has previously recognized, "[p]ursuant to the All Writs Act, 28 U.S.C. § 1651(a), federal courts are authorized to restrict access to litigants who repeatedly file frivolous or vexatious lawsuits." *Rutledge v. City of Danville*, No. 4:13-cv-00066, 2013 U.S. Dist. LEXIS 178643, at *21 (W.D. Va. Dec. 20, 2013); *see also In re Burnley*, 988 F.2d 1, 3-4 (4th Cir. 1992) (recognizing district court's power to impose limits upon those who abuse the judicial system). Further, district courts have the inherent power to control the judicial process and litigation when necessary to address conduct that abuses the judicial process. *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).

In *Safir v. United States Lines, Inc.*, the Second Circuit identified five factors that district courts should consider when determining whether or not to restrict a litigant's future access to the courts:

> (1) [T]he litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

8

792 F.2d 19, 24 (2d Cir. 1986).

In *Cromer v. Kraft Foods North America, Inc.*, the Fourth Circuit adopted the *Safir* factors. 390 F.3d 812 (4th Cir. 2004). And while "use of such measures against a *pro se* plaintiff should be approached with particular caution," *Cromer* at 818, this Court has recognized that, with respect to the Court's inherent power to curb abuse of judicial process, "there are no exceptions for *pro se* litigants." *Rutledge*, 2013 U.S. Dist. LEXIS 178643, at *21; *see also Haggins v. Tarwater*, No. 3:13-cv-00050-MOC-DSC, 2013 U.S. Dist. LEXIS 45668, at *1 (W.D.N.C. Mar. 29, 2013).

2.    Nasser's Conduct Warrants the Imposition of an Injunction.

Here, the *Safir* factors counsel in favor of imposing an injunction. As to the first *Safir* factor, Nasser is a serial litigant who has been successful in extracting settlements from defendants, and Nasser has repeatedly gloated about this fact in his communications with WhitePages' counsel. *See, e.g.*, McChesney Decl., Ex. A ("Just in case you might be interested there is a Mr. John Zunka Esquire who tried that tactic a few years back, you might check the extremely generous award that was my good fortune to secure in that matter."); McChesney Decl., Ex. C. ("I could imagine all the high-fives going around your office when you received the decision that you had prevailed, and I was history. It is reminiscence [sic] of my case Nasser v. Nationwide Ins. Co. In that matter, the Court granted summary judgment twice to Nationwide only to withdraw it twice on my Motion for Reconsideration, and they settled on my terms."); McChesney Decl., Ex. I. ("In 2000, [Nasser] sued a neighboring motorcycle repair shop for $25 million for allegedly poisoning him with carbon monoxide fumes. The case was settled out of court two years later to Nasser's 'satisfaction,' as he told The Winchester Star in 2002.").

The second *Safir* factor also favors WhitePages. Nasser's communications with

WhitePages' counsel make it apparent that Nasser's motives in the instant action have been to force WhitePages to unnecessarily incur legal fees and costs defending against his baseless claims.  This, too, Nasser seems happy to boast about.  Furthermore, every court that has ruled on claims similar to Nasser's has reached the conclusion that such claims are barred by the immunity provided by the Communications Decency Act, 47 U.S.C. § 230.  And, as this Court has held, despite years of litigating this action against WhitePages, Nasser has been "unable to produce <u>any</u> evidence that WhitePages created the offensive content" which form the basis of Nasser's claims.  Memorandum Opinion (Dkt. No. 51), p. 6, ln. 2-3 (emphasis added).  There can be no doubt that Nasser was well aware at the time he filed the second lawsuit against WhitePages that his claims lacked merit.  As Nasser admitted in a letter to WhitePages' counsel dated July 29, 2013:

> After my demands to you, last year, and my informing you of my intentions, <u>I attempted to retain legal counsel.  The attorneys I tried to retain, were not interested, because the protection afforded WhitePages, Inc. by the CDA, was too formidable an obstacle for them to overcome.  These were licensed and trained lawyers</u>.

*See* McChesney Decl., Ex. D, pg. 1. (emphasis added).  Consequently, Nasser's claims and contentions are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and do not "have evidentiary support."  Nasser, therefore, cannot "have an objective good faith expectation of prevailing" if he were to continue to pursue his claims against WhitePages.  In *Safir*, the court found significance in the fact that "most of [the plaintiff's] claims have been resoundingly rejected by the courts."  *Safir*, 792 F.2d at 24.

The third *Safir* factor requires the Court to consider whether a litigant is represented by counsel.  Although Nasser has proceeded *pro se* in this action since its removal to this Court, this

10

was not by financial necessity.  As Nasser has gleefully stated, he settled with Verizon Virginia, Inc. "for a very handsome sum" which has provided him the "was chess [sic]" to pursue his crusade against WhitePages.  *See* McChesney Decl., Ex. C; Ex. I.  Thus, while the fact that Nasser is a *pro se* plaintiff might counsel against the requested injunctive relief under other circumstances, under the circumstances present here, it does not.  Indeed, as Nasser himself admitted, he attempted to engage lawyers to represent him, all of whom declined, due to the non-meritorious nature of Nasser's case.  McChesney Decl., Ex. D.

Under the fourth *Safir* factor, the Court must consider whether Nasser has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel.  WhitePages respectfully submits that Nasser's communications, as described above, evidence that Nasser has caused WhitePages needless expense, and that such a result was in fact Nasser's desired goal.  WhitePages further submits that this Court is well aware that each of Nasser's narrative-styled filings confronts this Court's staff with the challenge of wading through irrelevant "evidence," unsupported legal conclusions and Nasser's own personal musings.

Finally, the Court must consider whether other sanctions would be adequate to protect the courts and other parties.  Given Nasser's stated intention to pursue an appeal in this matter, despite having no reasonable legal or factual basis for doing so, no other sanctions would be adequate here.

## B.   Alternatively, the Court Should Issue Monetary Sanctions for Nasser's Improper Conduct

In the event the Court declines to enjoin Nasser as requested, WhitePages requests that the Court issue monetary sanctions against Nasser, consisting of a small percentage of the attorneys' fees WhitePages has accrued in this matter, to prevent his further abuse of the judicial process.

     1.    <u>The Court has Inherent Authority to Issue Monetary Sanctions</u>.

"The case law is well-established that district courts have the inherent power to sanction parties for certain bad faith conduct, even where there is no particular procedural rule that affirmatively invests the court with the power to sanction." *Strag v. Bd. of Tr.,* 55 F.3d 943, 955 (4th Cir. 1995).   When invoking its inherent authority, "a court must exercise caution . . . and comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.*  Nevertheless, a court "should not shrink from exercising [its power] when sanctions are justified by the circumstances." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008).

Bad faith sanctions issued pursuant to a court's inherent authority, unlike sanctions pursuant to 28 U.S.C. § 1927, are not limited to counsel, but apply equally to litigants. *LaRouche v. Nat'l Broad. Co., Inc.,* 780 F.2d 1134, 1140 (4th Cir. 1986); *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980).  While *pro se* litigants are entitled to some deference by the courts, "*pro se* litigants are not immune from any sanction by virtue of their status alone . . . there is . . . no doubt that pro se litigants are subject to any and all appropriate sanctions for their misconduct." *Zaczek v. Fauquier County*, 764 F. Supp. 1071, 1077 (E.D. Va. 1991) (citing *Ballard v. Carlson*, 882 F.2d 93 (4th Cir. 1989), *cert. denied sub nom., Ballard v. Volunteers of America*, 493 U.S. 1084 (1990).  A *pro se* party "has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Jaffe v. Goodwin*, No. 3:03-cv-799, 2004 U.S. Dist. LEXIS 28129, at *10-11 (E.D. Va. Oct. 5, 2004) (quoting *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988)).

A court may issue sanctions where a party "'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Thomas v. Ford Motor Co.*, 244 F. App'x 535, 538 (4th

Cir. 2007) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).  Sanctions that may be issued under such circumstances include an award of attorneys' fees.  *Chambers,* 501 U.S. at 50.  Other courts have been unwilling to tolerate *pro se* plaintiffs whose conduct towards opposing parties is not civil or respectful of the legal process.  *See e.g.*, *Novak v. National Broadcasting Co.*, 779 F. Supp. 1428 (S.D.N.Y. 1992) (sanctioning pro se plaintiffs $ 3,500 for making "unseemly and unfunny" references in their written submissions to defense counsel as "Laurel and Hardy").

       2.      <u>Nasser's Conduct Merits Monetary Sanctions.</u>

While Nasser has gone out of his way in filings with this Court to portray himself as a mere victim, unknowledgeable of the legal system, and the object of "threats" and "personal attacks" by WhitePages' counsel, his communications with WhitePages' counsel portray a wholly different picture.

Nasser is no stranger to the courts.  *See, e.g.*, McChesney Decl., Ex. A ("Just in case you might be interested there is a Mr. John Zunka Esquire who tried that tactic a few years back, you might check the extremely generous award that was my good fortune to secure in that matter."); McChesney Decl., Ex. C.  ("I could imagine all the high-fives going around your office when you received the decision that you had prevailed, and I was history.  It is reminiscence [sic] of my case Nasser v. Nationwide Ins. Co.  In that matter, the Court granted summary judgment twice to Nationwide only to withdraw it twice on my Motion for Reconsideration, and they settled on my terms."); McChesney Decl., Ex. J.  ("In 2000, [Nasser] sued a neighboring motorcycle repair shop for $25 million for allegedly poisoning him with carbon monoxide fumes.  The case was settled out of court two years later to Nasser's 'satisfaction,' as he told The Winchester Star in 2002.").  Indeed, Nasser was successful in extracting a substantial settlement

from WhitePages' co-defendant in the original state law action, Verizon Virginia, Inc., which Nasser has used to pursue his meritless claims against WhitePages.  McChesney Decl., Ex. C ("We all know the outcome, I was still in on the nuisance claim, so Verizon didn't loss [sic] any time in settling with me for a very handsome sum. (It has given me the war chess [sic] to fight you, not that I really need it, pro se litigants don't charge much.)"); McChesney Decl., Ex. H ("An additional fee of $505.00, plus the additional typing paper can be adequately covered by the war chess [sic] provided by Verizon.").

It is ironic, then, that in Nasser's opposition to WhitePages' Bill of Costs (seeking a total of $453.05 consisting of the cost for filing the Notice of Removal in this action, as well as two hearing transcripts), Nasser proffered to this Court:

> WhitePages prevailed in their fraudulent two year long effort to inflict as much pain as possible on two innocent elderly person's [sic], they not want an extra "pound of flesh" for a baseless claim.  In the opinion of the Plaintiff this can only be the act of a sadistic, vengeful, greedy Defendant, that displays the same conduct as the Plaintiff came to expect during the Litigation.

Plaintiff's Motion to Dismiss the Bill of Costs Sent to the Plaintiff by the Defendant WhitePages, Inc. or in the Alternative, Set the Matter to be Heard by the Court (Dkt. No. 58) at 1.

Additionally, Nasser's conduct towards WhitePages' counsel, including accusing counsel of lying on multiple occasions in both written submissions to this Court and communications with WhitePages' counsel, as well Nasser's filing of baseless bar grievances, merits sanctions. *See, e.g.*, *Big Dipper Entm't, LLC v. City of Warren*, 641 F.3d 715, 719 (6th Cir. 2011) ("That two parties disagree does not mean that one of them has bad motives.  And even in the worst cases, the better practice is usually to lay out the facts and let the court reach its own conclusions."); *Wiese v. Cmty. Bank of Cent. Wisconsin*, 552 F.3d 584, 591 (7th Cir. 2009) (admonishing a party for unduly accusatory tone in briefs).  While courts recognize that

*pro se* litigants are not attorneys, they are nevertheless expected to conduct themselves with decorum. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("This court simply will not allow liberal pleading rules and *pro se* practice to be a vehicle for abusive documents.").

As Nasser's communications with WhitePages' counsel evidence, Nasser has engaged in, and intends to continue to engage in, meritless litigation against WhitePages for improper purposes. WhitePages has expended over $45,000 in legal fees litigating this second lawsuit by Nasser. In the event the Court declines to enjoin Nasser as requested, WhitePages requests that the Court issue monetary sanctions against Nasser in the amount of $2,250.00, approximately five percent (5%) of WhitePages' legal fees in this matter. WhitePages respectfully submits that the requested monetary sanctions would serve to deter Nasser from further abuse of the judicial process.[3]

### III.    CONCLUSION

WhitePages reluctantly brings this motion to protect itself against Nasser's serial litigation tactics. While it previously considered bringing the motion, it declined to do so due to Nasser's pro se status. However, as his actions and letters indicate, he is far from a hapless *pro se* plaintiff. Indeed, he is an experienced and serial litigant. For the foregoing reasons, WhitePages respectfully requests that the Court enjoin Nasser from filing any additional pleadings absent leave of Court or, alternatively, impose monetary sanctions against Nasser in the amount of $2,250.00, or such other amount as the Court deems just and proper.

//

//

---

[3] In the event the Court grants WhitePages' Motion, WhitePages will submit an itemized accounting of the legal fees accrued in this action.

DATED: January 30, 2014

/s/ Timothy J. Battle

Timothy J. Battle, Esq. (VSB #18538)
524 King Street
Alexandria, Virginia 22314
Tel: (703) 836-1216
Fax: (703) 549-3335

/s/ Sean M. McChesney

Sean McChesney (admitted *pro hac vice*)
/s/Venkat Balasubramani

Venkat Balasubramani (admitted *pro hac vice*)
Focal PLLC
800 Fifth Avenue, Suite 4100
Seattle, Washington 98104
Tel: (206) 617-3040
Fax: (206) 260-3966
Email: sean@focallaw.com
Email: venkat@focallaw.com
*Counsel for WhitePages, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 30, 2014, the foregoing was served upon plaintiff Michael J. Nasser, Sr. by placing the same in the United States mail, first class postage prepaid, addressed to the following address:

Michael J. Nasser, Sr.
436 Westside Station Drive
Winchester, Virginia 22601

DATED: January 30, 2014

/s/ Sean M. McChesney

Sean M. McChesney

16