UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| MICHAEL J. NASSER | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:12-cv-00097 |
| | ) | |
| | ) | By: Joel C. Hoppe |
| WHITEPAGES, INC., | ) | United States Magistrate Judge |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the Court are Defendant WhitePages, Inc.'s ("WhitePages") post-judgment motion for a pre-filing injunction or monetary sanctions (ECF No. 59) and Plaintiff Michael J. Nasser's motion to "dismiss" WhitePages's sanctions motion and "quash" the exhibits filed in support of that motion (ECF No. 68.) The Court will deny both motions, but admonish Nasser for his uncivil behavior and improper filings in this matter.

### I. Factual and Procedural Background

In October 2009, Plaintiff Michael J. Nasser began receiving calls from a large number of customers trying to contact Comcast, the cable provider for the Winchester, Virginia area. (ECF No. 1-1, p. 2.) Understandably annoyed, Nasser investigated these calls and soon discovered that Defendant WhitePages, Inc. listed his number after entries for "Comcast Phone of Virginia" and "Comcast Phont of Virginia" on its website, whitepages.com. (*Id.*)

Nasser called WhitePages on October 28, 2009, and asked for the listing to be removed. During that call, a WhitePages representative allegedly told him that she had processed the requested removals. (*Id.*, pp. 3–4.) However, the calls continued, and WhitePages maintained the

1

erroneous listing on its website until February 17, 2011, more than a year after Nasser first contacted WhitePages to alert it of the problem. (*Id.*, p. 5.)

In April, 2010, Nasser sued WhitePages and Verizon Virginia, Inc. in state court for nuisance, intentional infliction of emotional distress, and negligent infliction of emotional distress. (ECF No. 51, p. 2.) Nasser settled his nuisance claim against Verizon after the court dismissed his other two claims, and he non-suited the claims against WhitePages. (*Id.*)

Nasser re-filed his claims against WhitePages in state court on August 6, 2012. (*Id.*) WhitePages removed the case to federal court the following month. (*Id.*) After discovery limited to the issue of whether Nasser's claims against WhitePages were barred by the Communications Decency Act, 47 U.S.C. § 230, both parties moved for summary judgment. On November 22, 2013, presiding United States District Judge Michael F. Urbanski denied Nasser's motion and granted WhitePages's motion, finding that WhitePages was entitled to immunity under § 230 and that Nasser could not rely on promissory estoppel because Virginia law does not recognize it as a cause of action. On December 10, 2013, Nasser filed a "motion for reconsideration" of the Court's summary judgment order, which the Court denied on January 7, 2014.

On January 30, 2014, WhitePages filed a motion seeking entry of a pre-filing injunction, or, alternatively, monetary sanctions against Nasser. (ECF No. 59.) In this motion, WhitePages requests that the Court enjoin Nasser from filing any further papers in this matter without leave of Court "upon demonstration that any such pleading is being made without improper purpose, is in compliance with Rule 11 of the Federal Rules of Civil Procedure, and can survive a challenge under Rule 12 of the Federal Rules of Civil Procedure (if applicable)." (*Id.* at 2.) In the alternative, WhitePages requests that the Court "impose monetary sanctions against Nasser in

order to deter [him] from further abuse of the legal process." (*Id.*) WhitePages filed three affidavits and several exhibits in support of the motion. (ECF Nos. 60–62.)

On February 18, 2014, Nasser filed his response to WhitePages's sanctions motion. (ECF Nos. 63, 65.) That same day, WhitePages filed its reply in support of its motion. (ECF No. 66.) On March 12, Nasser filed a motion seeking to "dismiss" WhitePages's sanctions motion and "quash" the exhibits filed along with it. (ECF Nos. 68, 69.)

By order dated February 21, 2014, Judge Urbanski referred all non-dispositive motions to me to determine pursuant to 28 U.S.C. § 636(b)(1)(A), and all dispositive motions to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 67.)[1]

## II.   Facts Relevant to the Sanctions Motion

WhitePages bases its request for sanctions largely on Nasser's communications with its attorneys. Accordingly, it has submitted copies of several letters and emails it alleges that Nasser sent to counsel over the past two years. These exhibits show that Nasser frequently and gratuitously alluded to WhitePages's legal fees in settlement demands (ECF Nos. 60-3, 60-5, 60-6, 60-7, 60-9) and, at times, even taunted WhitePages about those expenses. (ECF Nos. 60-1, 60-6, 60-9.) They also show that Nasser first threatened and then filed bar complaints, which both the Virginia and Washington state bars determined were unfounded, against two of WhitePages's attorneys in this matter. (ECF Nos. 60-8, 61-1, 61-2.) Additionally, the emails contain insulting and sarcastic remarks that Nasser directed at WhitePages's counsel. (ECF Nos. 60-3, 60-4, 60-5.)

---

[1] Because I find a pre-filing injunction is not warranted in this case, I dispose of this motion by order, rather than report and recommendation. Although a "motion for injunctive relief" is one of the enumerated motions a federal magistrate judge may not "hear and determine" pursuant to 28 U.S.C. § 636(b)(1)(A), WhitePages's motion is better characterized as a motion for sanctions. The prevailing rule among district courts in this circuit is that a magistrate judge may dispose of a sanctions motion by order so long as the sanction imposed is not "dispositive." *See Bowers v. University of Virginia*, No. 3:06cv00041, 2008 WL 2346033, at *4 (W.D. Va. June 6, 2008) (Moon, J.).

Nasser's filings with this Court over the past two months have exhibited similar behavior. In one recent motion, Nasser mocked WhitePages's accrual of legal expenses, declaring that "[t]he purpose of litigation against an adversary is to extract a price for their transgressions. If you los[e] your legal case, you at least know that it came at a cost to the Defendant." (ECF No. 69, p. 1.) In Nasser's memorandum opposing the sanctions motion and supporting his own motion for expenses, he recounts an exchange from a hearing on November 14, 2012, in this case before United States Magistrate Judge B. Waugh Crigler. (ECF No. 65, p. 16.) At the hearing, Judge Crigler complimented Nasser on being "respectful" and "honoring to the court" and "articulate about his position." Judge Crigler then added that Nasser was "better than most lawyers who have come into court on some of the same kind of issues." (ECF No. 28, p. 52.) In his brief, Nasser suggests that the fact that "the court did not state with 'exception of present company' speaks volumes." (ECF No. 65, p. 16.) In the same brief, Nasser repeatedly refers to Focal, PLLC, the firm representing WhitePages, as the "anti-law firm." (*See, e.g.*, ECF No. 65, p. 3.)[2] He also repeatedly accuses WhitePages and its counsel of perpetuating a fraud on the court and engaging in "duplicitous language." (ECF No. 65, p. 5.) Additionally, as I have explained in the Report and Recommendation entered the same day as this Memorandum Opinion, Nasser's motion to recover his expenses from WhitePages and his motion to certify questions to the Virginia Supreme Court are frivolous.

### III. Discussion

#### A. WhitePages's Request for an Injunction

WhitePages first asks the Court to enjoin Nasser from filing any additional pleadings unless he complies with certain pre-filing conditions. (ECF No. 59, p. 8.) As authority for its

---

[2] Nasser cites a client testimonial posted on Focal PLLC's website: "[Focal] understands tech and entrepreneurs … they operate like the 'anti law firm,' and I mean that as the highest compliment." (ECF No. 65-1).

request, WhitePages cites the All Writs Act, 28 U.S.C. § 1651(a), which grants a federal court the authority to limit access to the courts by vexatious and repetitive litigants. *Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812, 818 (4th Cir. 2004) (citing *In re Packer Ave. Associates*, 884 F.2d 745, 747 (3d Cir. 1989)). In determining whether to grant a pre-filing injunction, a court must consider all relevant circumstances, including:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* at 818 (citing *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

The Court of Appeals for the Fourth Circuit has cautioned district courts that pre-filing injunctions are a "drastic remedy" to be used only "sparingly" and with a healthy respect for "constitutional guarantees of due process of law and access to the courts." *Id.* at 817. "[A] judge should not in any way limit a litigant's access to the courts absent 'exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions.'" *Id.* at 817–18 (citing *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)). Courts should approach pre-filing injunctions against *pro se* plaintiffs like Nasser with "'particular caution.'"*Id.* (citing *Pavilonis v. King*, 626 F.2d 1075 (1st Cir. 1980)). Finally, even if an injunction is warranted, it must be "narrowly tailored to fit the specific circumstances at issue" and may not be issued before the litigant is afforded notice and an opportunity to be heard. *Id.* at 819; *see also* Fed. R. Civ. P. 65(d).

Turning to the *Cromer* factors, the Court must first consider Nasser's "history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits." *Cromer*, 390 F.3d at 818. WhitePages asserts in its motion that "Nasser is a serial litigant who

5

has been successful in extracting settlements from defendants." (ECF No. 59, p. 9.) In support of this contention, it offers Nasser's emails noting his prior litigation successes and a newspaper article mentioning some of Nasser's previous lawsuits. (*Id*; ECF Nos. 60-1, 60-2, 60-3, 60-10.) These accounts provide no evidence that Nasser has engaged in prior vexatious or frivolous litigation. To the contrary, it appears that some of his claims have met with success.

WhitePages also points to Nasser's meritless bar complaints against two of its attorneys, Timothy Battle and Venkat Balasubramani. This Court does not condone one party filing frivolous bar complaints against another. Such sharp practices are unacceptable. An attorney's good standing with his or her bar is a matter of grave importance.

Even so, courts in this circuit have denied injunctions against parties with far more extensive and better-documented litigation histories. *See Camastro v. City of Wheeling*, No. 5:06CV69, 2009 WL 3671614, at *2 (N.D. W. Va. Oct. 30, 2009) ("Here, the plaintiff does not have an extreme history of litigation with this Court. While it is alleged that the plaintiff has sued the defendants eleven times in state court in the past twelve years, the plaintiff has filed three suits against defendant City of Wheeling in this Court."). Courts in this district have issued pre-filing injunctions against parties who wage prolonged campaigns of litigation involving repeated attempts to re-litigate issues decided against them. *Rutledge v. City of Danville, Va.*, No. 4:13cv00066, 2013 WL 6804697, at *6 (W.D. Va. Dec. 20, 2013) ("The present action, filed November 18, 2013, is the twelfth (12th) *pro se* federal lawsuit that Plaintiff has filed in Virginia since March of 2009."); *Switzer v. Thomas*, No. 5:12cv00056, 2013 WL 693090, at *13 (W.D. Va. Feb. 25, 2013) (enjoining litigant who filed "a dozen or more lawsuits," many raising previously-decided claims, in this district against public officials), *report and recommendation adopted*, 2013 WL 1145864 (Mar. 19, 2013); *Miller v. Kelley*, No. 7:10cv00546, 2012 WL

726569, at *1–2 (W.D. Va. Mar. 6, 2012) (imposing narrowly tailored pre-filing injunction on litigant who filed lawsuits against a Virginia resident and her husband in federal district courts in Colorado, Wyoming, and the District of Columbia, as well as in state courts in Colorado, all but one of which had been dismissed); *In re Peanut Corp. of America*, No. 6:10cv00027, 2010 WL 3463214, at *3 (W.D. Va. Sept. 1, 2010) (enjoining litigant who had filed, up to that point, at least 43 federal lawsuits); *Thurston v. Melton*, No. 3:07cv00036, 2008 WL 376260, at *5 (W.D. Va. Feb. 11, 2008) (issuing an injunction against a plaintiff who filed thirteen lawsuits against Louisa County Public Schools or its employees, twelve of which were duplicative). Nasser has no such history. Accordingly, the first *Cromer* factor weighs strongly against granting an injunction.

WhitePages argues that the second factor—a party's good faith basis in the litigation—weighs in its favor because Nasser's communications demonstrate that his motive in suing WhitePages was "to force WhitePages to unnecessarily incur legal fees and costs defending against his baseless claim." In addition, WhitePages points out that that several attorneys had told Nasser they would not represent him because they believed his claims might be preempted by the Communications Decency Act and that the District Court found that Nasser had been "unable to produce any evidence that WhitePages created the offensive content." (ECF No. 59, p. 10.) Thus, WhitePages asserts, Nasser's claims were unwarranted in law and lacking in factual basis. (*Id.*)

Nasser's own statements that he takes satisfaction in imposing litigation expenses on WhitePages and that the purpose of litigation is to "extract a price" from the adversary suggest that, at least recently, Nasser has been acting, at least in part, with an improper motive. However, Nasser's written communications that WhitePages submitted with its motion also permit a

7

reasonable inference that Nasser pursued his claims with subjective good faith during much of the lawsuit—he may have thought that all of the attorneys were wrong about the preemption issue. Moreover, although his claims ultimately proved legally meritless, Nasser's grievances were real and his impulse to seek redress in the courts was understandable. Thus, the second *Cromer* factor does not weigh strongly in favor of an injunction.

As to the third *Cromer* factor—the burden on the courts and other parties—WhitePages argues that Nasser's communications with its counsel caused them needless expense, and that his "narrative-styled filings confront[] this Court's staff with the challenge of wading through irrelevant 'evidence,' unsupported legal conclusions and Nasser's own personal musings." (ECF No. 59, p. 11.) WhitePages's description may fit Nasser's most recent filings, but it does not describe his filings on the whole, especially given his *pro se* status. Moreover, Nasser has not conducted the sort of abusive motions practice that has caused this and other courts to impose pre-filing injunctions on other litigants. *See, e.g.*, *Switzer*, 2013 WL 693090, at *14 (noting that a litigant's "unreasonably active and aggressive motions practice … sets him apart from other parties who file frivolous lawsuits in this court"); *Washington v. Alaimo*, 934 F. Supp. 1395, 1397–99 (S.D. Ga. 1996) (recounting litigant's history of filing frivolous motions in several lawsuits). Thus, the third factor does not weigh in favor of an injunction.

The fourth factor—the adequacy of alternative sanctions—weighs decisively against an injunction. This factor parallels the requirement applicable to all injunctions that remedies available at law must be inadequate to compensate for threatened injury. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). WhitePages's sole contention under this factor is that "[g]iven Nasser's stated intention to pursue an appeal in this matter, despite having no reasonable legal or factual basis for doing so, no other sanctions would be adequate here." (ECF

No. 59, p. 11.) The injury WhitePages fears—the expense of responding to a frivolous appeal—is not one this Court is empowered to address.

Nasser's conduct toward opposing counsel has been uncivil at times, and his recent filings have been meritless. However, lesser sanctions have not been considered, much less attempted. This Court has not warned or reprimanded Nasser for his conduct in this litigation. Moreover, the Court to date has not expressed an overly negative view of the nature of Nasser's claims, noting only that his motion for reconsideration was "without merit." (ECF No. 54, p. 6.) To issue a pre-filing injunction against a *pro se* litigant who has not even been warned that his behavior is improper is not warranted at this time, given Nasser's conduct. Other, less drastic measures will suffice.

Because none of the *Cromer* factors weighs in favor of granting a pre-filing injunction, and most factors weigh against an injunction, the Court will not enter a pre-filing injunction against Nasser in this case.

### B. WhitePages's Request for Monetary Sanctions

As an alternative to a pre-filing injunction, WhitePages seeks monetary sanctions against Nasser for $2,250.00 or some other amount set by the Court. WhitePages represents that the requested amount of $2,250 is roughly five percent of its total legal fees to date of $45,000. (ECF No. 59, p. 15.)

The Court has the inherent authority to sanction litigants for misconduct in litigation. *Strag v. Board of Trustees, Craven Community College*, 55 F.3d 943, 955 (4th Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1995)).[3] "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44–45. A court

---

[3] Additionally, a court may, on its own motion, order a litigant to show cause why he should not be sanctioned for improper conduct. Fed. R. Civ. P. 11(c)(3).

may invoke its inherent powers to assess attorney fees against a party "(1) where a party's litigation efforts directly benefit others, (2) where a party has willfully disobeyed a court order, [or] (3) where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Strag*, 55 F.3d at 955 (citing *Chambers*, 501 U.S. at 45–46).

WhitePages asks the Court to invoke its inherent authority to sanction Nasser based on alleged bad faith litigation. Bad faith is shown where a litigant "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Gwynn v. Walker (In re Walker)*, 532 F.3d 1304, 1309 (11th Cir. 2008) (per curiam) (citations omitted). The party against whom sanctions are sought must be afforded notice of the court's intention to impose sanctions and the opportunity to contest both the finding of bad faith and the assessment of fees. *Id.* (citing *Chambers*, 501 U.S. at 49).

Before WhitePages filed its sanctions motion, Nasser had not filed anything with the court that was sanctionable on its face. His positions in this litigation were not unreasonable, especially for a *pro se* litigant.

However, Nasser's most recent filings, including his motion to certify questions to the Supreme Court of Virginia and his motion to recover his own litigation expenses from WhitePages, utterly lack merit. In his brief opposing WhitePages's sanctions motion, he hurled insults and unwarranted allegations of misconduct at opposing counsel. Additionally, WhitePages has provided written statements from Nasser that suggest his motive has shifted from a good faith effort to "vindicate [his] rights through the judicial process," *In re Kunstler*, 914 F.2d 505, 520 (4th Cir. 1990), to running up his opponent's legal fees. Such conduct stands in stark contrast

to Judge Crigler's remark commending Nasser for his "respectful" demeanor in the courtroom and articulate advocacy.

This Court expects all litigants, including *pro se* litigants, to conduct themselves with civility and decorum, both in their filings with the Court and communications with each other, and to litigate in good faith. This Court will not tolerate additional uncivil conduct or filings made with an improper purpose.

Sanctions under the Court's inherent powers, like sanctions under Rule 11, are discretionary. The Advisory Committee Note to the 1993 Amendment of Rule 11 lists the following factors relevant to determining whether a litigant should be sanctioned pursuant to Rule 11 and, if so, what sanction is appropriate:

- Whether the improper conduct was willful, or negligent;
- Whether it was part of a pattern of activity, or an isolated event;
- Whether it infected the entire pleading, or only one particular count or defense;
- Whether the person has engaged in similar conduct in other litigation;
- Whether it was intended to injure;
- What effect it had on the litigation process in time or expense;
- Whether the responsible person is trained in the law;
- What amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and]
- What amount is needed to deter similar activity by other litigants.

Here, Nasser's uncivil conduct and alleged intent to litigate for the purpose of driving up WhitePages's litigation expenses weigh in favor of imposing sanctions. On the other hand, no reliable evidence exists in this record to show that Nasser has engaged in sanctionable conduct in other litigation. None of Nasser's filings prior to WhitePages's sanctions motion were unreasonable or repetitive. Further, Nasser is *pro se* and has not been previously reprimanded or sanctioned for improper conduct in this or other litigation. *See* 5A Wright & Miller, Federal

Practice & Procedure § 1336.1 n. 11.5 (3d ed.) (noting many courts have considered a litigant's *pro se* status as weighing against imposing sanctions).

The fact that Nasser has never been warned about his conduct suggests that monetary sanctions may not be necessary to deter him from further misconduct in this or other cases. Furthermore, WhitePages offers no basis for the requested award of five percent of its total attorney's fees in this action other than its assertion that "the requested monetary sanctions would serve to deter Nasser from further abuse of the judicial process," (ECF No. 59, p. 15), and it fails to explain why an alternative sanction would not be sufficient to deter such abuse.

Therefore, under all of the circumstances, the Court finds that an admonishment will suffice at this time.

## IV. Conclusion

Nasser's conduct as of late has fallen below the standards of behavior this Court expects of all litigants, whether *pro se* or represented by counsel. Because the Court finds that an admonishment should suffice to deter future misbehavior, more severe sanctions are inappropriate at this time. Accordingly, by separate order entered this day, the Court will deny WhitePages's sanctions motion, deny Nasser's motion as moot, and admonish Nasser for his uncivil behavior and improper filings.

The Clerk shall send a copy of this Memorandum Opinion to counsel of record and any unrepresented party.

ENTER: April 1, 2014.

Joel C. Hoppe
United States Magistrate Judge